Francisco Medina Vega, demandante y recurrente, *v.* Unión Obreros Cervecería Corona, etc., demandada y recurrida.

*Número:* R-62-128       *Resuelto:* 30 de noviembre de 1962

*Alberto Picó, Francisco A. Rosa Silva* y *Rieckehoff & Vargas,* abogados del recurrente; *Martín Avilés Bracero,* abogado de la recurrida.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Este recurso envuelve la novedosa cuestión de la procedencia de una reclamación de salarios contra unión obrera por horas extraordinarias trabajadas por el presidente de ésta. ¿Existe entre la unión y su presidente la relación de patrono y empleado que permita la aplicación de las disposiciones de la ley que regula la jornada de trabajo en Puerto Rico, Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 271 et seq.? En caso afirmativo, ¿estaría el reclamante excluido como ejecutivo o administrador? En gran medida, la solución a las cuestiones planteadas depende de los hechos particulares de cada caso.

El recurrente Francisco Medina Vega desempeñó el cargo de Presidente de la Unión de Trabajadores de la Industria Cervecera y Bebidas Refrescantes y Ramas Anexas de Puerto Rico, afiliada a la Unidad General de Trabajadores de Puerto Rico (U.G.T.), [1] desde el 29 de agosto de 1953 hasta el 8 de noviembre de 1959, o sea, por espacio de aproximadamente seis años y tres meses. De las determinaciones de hechos del tribunal de instancia se deduce que en el desempeño de las funciones de su cargo el querellante trabajaba ocasionalmente en exceso de ocho horas diarias. [2]

En adición a las funciones usuales que se asocian con la presidencia de cualquier organización—representar la unión;

---

[1] Para julio de 1959, ocurrió una desafiliación y la unión demandada se conoció como Obreros Unidos de la Cervecería Corona, Coca Cola, Canada Dry y Ramas Anexas de Puerto Rico, Independiente, y se identificaba con la sigla O.U.I. Actualmente se encuentra afiliada a la U.B.W., AFL–CIO.

[2] Ello ocurría cuando se celebraban reuniones ordinarias y extraordinarias de la matrícula de la unión, reuniones de la junta directiva de la organización y reuniones del Comité de Quejas y Agravios y cuando se giraban visitas a las locales situadas en distintos pueblos de la Isla.

cumplir y hacer cumplir los acuerdos y resoluciones de las reuniones anuales y de la junta directiva, así como las disposiciones reglamentarias de gobierno interno; presidir las reuniones de la unión y la directiva; rendir informes de sus gestiones; nombrar comisiones y firmar documentos oficiales, así como cheques y órdenes de pago—se le exigía por disposición reglamentaria que prestara sus servicios exclusivamente a la Unión, y al efecto, se le requería para que visitara diariamente todas las fábricas del área metropolitana con las cuales existieran convenios colectivos y, periódicamente, a las ramas anexas o locales.(³)

Como compensación por sus servicios se le fijó "un salario igual al que devengan los trabajadores de su oficio en la Industria, pero el salario no será mayor de treinta y cinco dólares ($35.00) semanales [y] [l]a Unión pagará además al Presidente todos los beneficios que la Unión adquiera para sus miembros a través [sic] de contratos colectivos, tales como vacaciones con paga, bonificación de navidad, plan de servicios médicos y Hospitalización, y Seguro Social" (Reglamentos 1952 y 1954); "el salario que devenga el obrero diestro de Corona por 48 horas a la semana" y los beneficios económicos a que se ha hecho referencia (Reglamento 1956); "un salario de trabajador diestro en el departamento donde él trabajaba para las Compañías" y gastos de transportación y los beneficios económicos indicados (Reglamento de 1959). Podrá observarse que la Unión pagaba al querellante un salario que respondía a los tipos consignados en el convenio colectivo. La jornada regular le fue satisfecha a razón de los tipos por hora que se indican a continuación:

Agosto 29, 1953 a Dic. 31, 1953   — $0.625
Enero 1, 1954   a Dic. 17, 1954   — 0.725

---

(³) Artículos 39 y 40 del Reglamento de 21 de junio de 1952; Artículo 35 del Reglamento de 19 de diciembre de 1954; Artículo 34 del Reglamento de diciembre de 1956; Artículo 25 del Reglamento de 12 de julio de 1959.

| Dic. 18, 1954 | a Marzo 22, 1957 | — | 0.935 |
| Sept. 7, 1957 | a Dic. 27, 1957 | — | 1.15 |
| Enero 3, 1958 | a Febrero 27, 1958 | — | 1.15 |
| Marzo 7, 1958 | a Nov. 8, 1959 | — | 1.20 [1] |

El tribunal de instancia concluyó que el querellante como oficial de la unión demandada, no es el obrero, empleado o trabajador a que se refiere la ley sobre jornada de trabajo, y en su consecuencia, desestimó la querella. Al efecto hizo referencia a la definición de obrero o empleado contenida en la sección 1ª de la Ley Núm. 10 de 14 de noviembre de 1917, según adicionada por la Ley Núm. 12 de 2 de julio de 1923, 32 L.P.R.A. sec. 3102, [4] y al artículo 16 de la Ley Núm. 379, supra, 29 L.P.R.A. sec. 285, [5] que refiere las ocupaciones sujetas a dicha ley. ■

[4] "La palabra 'obrero' según se emplea en esta Ley comprenderá a todo trabajador manual, de cualquier sexo y a aquellas personas naturales que estuvieren empleadas en servicios u ocupaciones domésticas, de ambos sexos, y la palabra 'empleado' comprenderá a toda clase de artesano, empleado o dependiente de comercio o indústria, en la acepción general de estas últimas dos palabras."

Esta sección fue sustituida por la Sección 2 de la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. (Supl. 1961) sec. 3119, pág. 51, que sigue sustancialmente la redacción anterior, pero que significativamente al referirse a la palabra "empleado" indica que "se usa en su acepción más amplia."

[5] "Artículo 16.—Las disposiciones de esta Ley regirán en todo establecimiento comercial, industrial y agrícola; en todo taller, fábrica, central, molino y factoría; en toda hacienda, finca, granja, estancia y plantación; en toda empresa de servicio público; en todo negocio lucrativo, incluyendo imprentas, editoriales, empresas periodísticas, clínicas, hospitales, farmacias, instituciones docentes, casas de hospedaje, hoteles, fondas, restaurantes, tiendas, colmados, almacenes, depósitos, mercados, garages, panaderías, teatros, hipódromos, casinos y otros similares; en toda oficina o establecimiento de negocio, bufete, consultorio y despacho profesional y en todo sitio destinado a la prestación de servicio de cualquiera índole mediante paga.

"También se aplicarán las disposiciones de esta Ley a todos los chóferes y conductores de vehículos de motor públicos y privados con excepción de aquellos que trabajan a comisión.

"Las disposiciones de esta Ley no se aplicarán a personas empleadas en el servicio doméstico; Disponiéndose, sin embargo, que éstas tendrán derecho a un día de descanso por cada seis de trabajo.

"No se aplicarán las disposiciones de esta Ley a los empleados del

Para la determinación de la cuestión envuelta en este recurso es irrelevante la definición de obrero o empleado de la Ley 10 de 1917, pues la misma se refiere al procedimiento especial para entablar las reclamaciones, y no cubre ningún aspecto sustantivo de la reclamación por horas extraordinarias de labor. En cuanto se refiere a la Ley 379 debemos considerar que define empleado como ". . . toda persona empleada mediante salario, sueldo, jornal u otra forma de compensación en cualquier ocupación. . ."; que ocupación incluye ". . . todo *servicio,* labor, prestación o trabajo que un empleado realice para su patrono"; que patrono comprende a "toda persona natural o jurídica"; y que se destaca que "Las disposiciones de esta Ley regirán. . . en todo sitio destinado a la *prestación de servicios de cualquier naturaleza mediante paga."* Arts. 16 y 19 de la Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. secs. 285 y 288. De lo relacionado se deduce que, bajo determinadas circunstancias, una unión obrera puede ser considerada como patrono a los fines de la aplicación de la ley sobre jornada de trabajo.

*Williams* v. *United Mine Workers of America,* 172 S.W.2d 202 (Ky. 1943), en que se trataba de la aplicación de la Ley Federal de Normas Razonables del Trabajo, [6] sostuvo que la intención congresional no fue excluir a las organizaciones obreras de las disposiciones de la ley cuando la unión *actuaba como patrono.* Se destacó que, no obstante el fin básico de

Gobierno Insular, de los Gobiernos Municipales, ni del Gobierno de la Capital ni a los de las agencias o instrumentalidades de dichos gobiernos, con excepción de aquellas agencias o instrumentalidades que se dediquen a empresas agrícolas, industriales, comerciales o de servicio público."

[6] La sección 3(d) de la Ley Federal de Normas Razonables, 29 U.S.C. sec. 203(d), define patrono como que "incluye a toda persona que actúe directa o indirectamente para beneficio del patrono en relación con un empleado pero no incluye los Estados Unidos ni los estados o subdivisiones políticas de éstos, ni cualquier organización obrera (*a menos que actúe como patrono*), o cualquier persona que actúe en su capacidad de oficial o agente de dicha organización."

beneficio mutuo que anima la organización de las uniones y la ausencia de propósitos de lucro, era concebible como necesario y apropiado para lograr los fines para los cuales se constituyen y proteger los intereses de sus miembros, que se utilizaran empleados. Así, cuando una unión empleó una persona por un jornal diario a los fines de comprobar el peso del carbón extraído por los miembros de la unión, para que se le acreditara a cada minero la cantidad correcta, se creaba una relación de patrono y empleado.[7] ■

Aun para fines de contratación colectiva se ha sostenido que una unión puede considerarse como patrono. *Office Employees I.U.* v. *NLRB*, 353 U.S. 313 (1957); *Air Line Pilots Ass'n*, 97 NLRB 929 (1951); véase, *NLRB cannot refuse jurisdiction over labor union acting as employer*, 57 Col. L. Rev. 1029 (1957. ■

Estableciendo el hecho básico de que una unión está cubierta por los preceptos de la Ley 379 *cuando actúa como patrono*, examinemos cuidadosamente los hechos de este recurso para determinar si entre las partes se creó una relación de patrono y empleado. Convenimos inmediatamente en que si las obligaciones del querellante se hubiesen limitado a las funciones que normal y ordinariamente desempeña el presidente de una organización—a los cuales hemos hecho referencia anteriormente—la naturaleza misma de los deberes excluiría la relación mencionada. Véase, *The Unpaid Local Leader*, 3 Lab. L. J. 685 (1952). Sin embargo, bajo la denominación de "presidente", se le señalaron obligaciones que corresponden propiamente a un empleado corriente, como la de visitar diariamente las empresas sitas en el área metropolitana con las cuales la unión tenía relaciones, con el propósito obvio de asegurarse del cumplimiento de las obligacio-

---

[7] El caso de *Williams* es objeto de un comentario en 92 U.Pa.L.Rev. 327 (1944), pero no se relaciona con la cuestión que discutimos.

nes contraídas en virtud del convenio, todo ello para la defensa y protección de los intereses de los afiliados. Esta obligación se extendía hasta la supervisión limitada de las locales filiales de distintos pueblos de la Isla. A este respecto es significativa la forma en que se le fijaba la compensación, siempre considerándolo como igual a un empleado de la empresa en el ramo al cual se dedicaba antes de designársele para la dirección de la unión, y que conservó todos los beneficios económicos que se proveían en el convenio para los empleados. Todas estas circunstancias concurrentes nos convencen de que en relación con estas actividades de supervisión diaria del cumplimiento del convenio en el área metropolitana y la Isla, el querellante era un empleado de la Unión, y si en el desempeño de las mismas trabajó en exceso de ocho horas diarias, la unión—como patrono— está obligada a compensárselas a tiempo doble. ■

No debe olvidarse que la legislación sobre jornada de trabajo es una medida de efectiva protección de la salud, la seguridad y la vida de los trabajadores. Parece eminentemente justo que las uniones—punta de lanza para la consagración de esta medida de reivindicación social— sean las primeras en practicar aquello que predican. Una solución contraria desvalorizaría el contenido del derecho. ■

Un mero examen de las obligaciones del querellante a que nos hemos venido refiriendo, o sea, excluyendo las que se asocian ordinariamente con la dirección de una organización obrera, señala que en cuanto a las mismas no está excluido por tratarse de un ejecutivo o un administrador. En *Piñán* v. *Mayagüez Sugar Co., Inc.*, 84 D.P.R. 89 (1961) ; ratificado en *Morales* v. *Tribunal Superior*, 84 D.P.R. 123 (1961), indicamos que a partir del 15 de enero de 1952 la determinación de si el querellante era o no un ejecutivo dependía de la concurrencia de los requisitos enumerados en el artículo 1 del reglamento aprobado por el Secretario del Trabajo para

650

definir dicho término, 29 R.&R.P.R. sec. 246e-1. (⁸)    Igual
pronunciamiento es aplicable a los fines de determinar si se
trata de un administrador, según se define en el reglamento
mencionado, 29 R.&R.P.R. sec. 246e-2. (⁹)    Baste decir que
aquí el empleo no presupone el ejercicio de facultades dis-
crecionales.

(⁸) Dicho artículo lee así:

"Sec. 246e–1.  *Ejecutivo*

"El término 'ejecutivo' a los fines de la Sec. 33 de la Ley de Salario
Mínimo de Puerto Rico [29 L.P.R.A. sec. 246e] significa:

"(1) Cualquier empleado.

"(A) cuyo deber primordial consista en la dirección de la em-
presa en que trabaja o en la dirección de un habitualmente reconocido
departamento o subdivisión de la empresa; y

"(B) que habitual y regularmente dirija el trabajo de otros dos
o más empleados de la empresa o de tal departamento o subdivisión
de la empresa; y

"(C) que tenga la autoridad de emplear y despedir otros emplea-
dos o cuyas sugerencias y recomendaciones sobre el empleo y despido
de otros empleados y en cuanto al mejoramiento y ascenso o en relación
con cualquier otro cambio de status de otros empleados hayan de
recibir especial atención; y

"(D) que habitual y regularmente ejerza facultades discrecio-
nales; y

"(E) que no dedique más del 20 por ciento de las horas tra-
bajadas en la semana de labor a actividades que no estén directa
e íntimamente relacionadas con el desempeño del trabajo descrito en
el párrafo (1), incisos (A) a (D) de esta sección; Disponiéndose
que este inciso (E) no será aplicable en el caso de un empleado que
esté él solo a cargo de un establecimiento independiente o de una
rama del establecimiento físicamente separado del mismo, o que sea
dueño de por lo menos el 20 por ciento del interés de la empresa en
que esté empleado; y

"(F) que reciba por sus servicios una compensación fija (por
día, semana, quincena o períodos mayores) equivalente a un salario
semanal o menor de $30.00, excluyendo alimentos, vivienda u otros
servicios; o

"(2) Cualquier empleado

"(A) cuyo trabajo cumpla con los requisitos dispuestos en el
párrafo (B), incisos (A) y (B) de esta sección; y

"(B) que reciba por sus servicios una compensación fija (por
día, semana, quincena o períodos mayores) equivalente a un salario
semanal no menor de $100, excluyendo alimentos, vivienda u otros
servicios."

*En virtud de lo expuesto se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 17 de abril de 1962, y se devolverá el caso para que con vista de la prueba practicada, se le compensen al querellante a tipo doble las horas extras trabajadas como empleado según se expone en esta opinión.*

(°) Dicho artículo lee así:

"§ 246e-2.   *Administrador*

"El término 'administrador' a los fines de la sec. 33 de la Ley de Salario Mínimo de Puerto Rico [29 L.P.R.A. sec. 246e] significa:

"(1) Cualquier empleado

(A) cuyo deber primordial consista en desempeñar trabajo de oficina o trabajo fuera de oficina que no sea de naturaleza manual, estando uno u otro trabajo directamente relacionado con las normas de la dirección de la empresa o con las operaciones generales del negocio del patrono o de los clientes del patrono: y

"(B) que habitual y regularmente ejerza discreción y juicio independiente; y

"(C) (i) que regular y directamente ayude al dueño o a uno de los dueños de la empresa, o a una persona empleada en la capacidad de ejecutivo o administrador (según estos términos se definen en esta División) ; o

"(ii) que realice bajo solamente supervisión general trabajo de carácter técnico y especializado que requiera entrenamiento, experiencia o conocimientos especiales; o

"(iii) que ejecute bajo solamente supervisión general encomiendas y tareas especiales; y

"(D) que no dedique más del 20% de las horas trabajadas en una semana de labor a actividades que no estén directa o íntimamente relacionadas con el desempeño del trabajo descrito en el párrafo (1), incisos (A) al (C) de esta sección; y

"(E) que reciba por sus servicios una compensación fija (por día, semana, quincena o períodos mayores) o a base de por ciento u honorarios, equivalente a un salario mensual no menor de $200, excluyendo alimentos, vivienda u otros servicios; o

"(2) Cualquier empleado

"(A) cuyo trabajo cumpla con los requisitos dispuestos en el párrafo (1), incisos (A) y (B) de esta sección; y

"(B) que reciba por sus servicios una compensación fija (por día, semana, quincena o períodos mayores), o a base de por ciento u honorarios, equivalente a un salario semanal no menor de $100, excluyendo alimentos, vivienda u otros servicios."