JUAN FERNÁNDEZ, JR., sustituido por CARMEN BETANCOURT VDA. DE FERNÁNDEZ Y SUS HIJOS, ETC., demandantes y recurrentes, *v.* UNIÓN DE TRABAJADORES DE MUELLES ILA 1740 (UTM), AFL–CIO, demandada y recurrida.

*Número:* R-68-246          *Resuelto:* 14 de enero de 1972

*David F. Barreto,* abogado de los recurrentes; *Charles H. Juliá,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Juan Fernández, Jr., demandó a la Unión de Trabajadores de Muelles, ILA 1740 (UTM) AFL–CIO en reclamación de horas extras trabajadas tanto durante los días de la semana como en los días de descanso y días feriados en el período comprendido entre el 29 de junio de 1963 y el 27 de

junio de 1966. La reclamación es por 5,905 horas extras montantes a $8,634.38 más una suma en concepto de penalidad para un total de $17,268.76 más las costas y honorarios de abogado.

La querellada alegó como defensa afirmativa que durante el período relacionado en la querella el querellante trabajó para ella en su capacidad de ejecutivo, oficial y organizador de la querellada.

Fundándose en esta defensa, el tribunal de instancia dictó sentencia declarando sin lugar la demanda, luego de formular las siguientes conclusiones de hecho:

"1—El querellante señor Juan Fernández, hijo, fue electo Primer Vocal de la Junta de Directores de la querellada, Unión de Trabajadores de Muelles, ILA 1740 (UTM) AFL–CIO, y ocupó este puesto desde el día 29 de junio de 1963 hasta el día 25 de junio de 1966, en que cesó como tal.

2—La Constitución y Reglamento de la Unión querellada, en cuanto a las funciones del querellante, dispone en lo pertinente que la Junta de Directores consistirá de once oficiales, a saber, Presidente, Vicepresidente, Secretario Financiero, Secretario de Actas, Tesorero, Guía, 'Marshal', y 4 Vocales.

3—La Sección 8 del Art. 7 de la Constitución de la Unión dispone, en cuanto a los deberes de los vocales, de la siguiente manera:

'Los Vocales serán cuatro y tendrán los siguientes deberes: Desempeñarán todas las funciones que se les confieran, velarán porque se cumplan todos los preceptos administrativos y todos los apartados de esta Constitución, cumplirán los acuerdos de la Junta de Directores y de la matrícula, investigarán trimestralmente, del 20 al 30 de cada trimestre, las finanzas de la Unión y rendirán un informe de su labor a la matrícula.'

4—Entre las funciones a desempeñar por el querellante estaban las encomiendas de contestar el teléfono de las oficinas de la Unión, preparar avisos de llegada de barcos, escribir en el tablón de anuncios la fecha y hora de llegadas de barcos y las cuadrillas necesarias ('gangas'), acompañar al tesorero al banco para buscar el dinero de operaciones y cambiar los cheques de nóminas, buscar los cheques del descuento de cuotas ('check off')·

de las compañías, recibir las personas que visitaban la oficina, atender la selección de las cuadrillas en los muelles, abrir y cerrar las oficinas de la querellada, investigar las querellas de los unionados y atender detalles de los funerales de los unionados fallecidos o de sus familiares.

5—Como vocal de la Unión el querellante cobraba $20.00 de sueldo y $30.00 de dietas semanales por su trabajo de lunes a viernes. Cuando trabajaba los sábados se le pagaban $10.00 adicionales de dieta y cuando trabajaba los domingos se le pagaban otros $10.00 en el mismo concepto. Los sueldos de los oficiales los aprobaba en última instancia la Asamblea de la Unión que ratificaba los acuerdos de la directiva sobre esta materia. Tanto el querellante que era Primer Vocal como los demás oficiales de la Unión no perforaban tarjetas ni estaban sujetos a relojes de tiempo. Por su vecindad con la Unión el querellante se encontraba más unido que ningún otro de los vocales a la oficina de la Unión y desempeñaba el ochenta y cinco por ciento de las labores de esa oficina.

6—Aunque las horas de trabajo fijadas eran de ocho a doce de la mañana y de una y treinta a cuatro de la tarde, de lunes a viernes, y de ocho a doce de la mañana los sábados de hecho el querellante pasaba más tiempo del requerido tanto en diligencias en la oficina como fuera de ella en virtud de las encomiendas oficiales que como vocal de la Unión se le asignaban. En este particular damos crédito a la prueba del querellante en cuanto a las horas extras que trabajaba fuera de las mencionadas horas regulares.

7—Para el período a que se contrae la querella ya el querellante disfrutaba de los beneficios del seguro social y la proporción de dietas y sueldo que recibía respondía a un acuerdo con la Unión, a los fines de que el ingreso que el querellante percibía no fuera a menoscabar su pensión de seguro social a tenor con los ingresos que este sistema de seguridad social permite a sus beneficiarios devengar."

Después de leer la transcripción de la evidencia concluimos que las anteriores conclusiones están sostenidas por la prueba y que no son erróneas.

En 30 de noviembre de 1962 este Tribunal emitió su decisión en el caso de *Medina Vega* v. *Unión Obreros Cervecería,*

86 D.P.R. 642 (1962). Interpretando las disposiciones de la Ley Núm. 379 de mayo 15 de 1948, según enmendada hasta entonces, y específicamente aquéllas sobre la definición de "empleado", "ocupación" y sitios donde regiría la Ley, resolvimos en dicho caso que bajo determinadas circunstancias una unión obrera puede ser considerada como patrono a los fines de la aplicación de la referida ley y que cuando al presidente de una unión obrera se le señalan obligaciones que corresponden propiamente a un empleado corriente, y en el desempeño de las mismas trabaja en exceso de ocho horas diarias, la unión, como patrono, está obligada a compensárselas a tiempo doble.

Para entonces, los funcionarios de las uniones obreras no estaban excluidos de las disposiciones de la Ley Núm. 379, según se definía en ésta el término "empleado". Sin embargo, para contrarrestar el impacto adverso que esta decisión pudiera tener en las finanzas de las uniones obreras, la Legislatura enmendó el Art. 19 de la Ley Núm. 379, mediante la Ley Núm. 11 de 26 de abril de 1963, disponiendo que:

"La palabra 'Empleado' no incluirá. ejecutivos, administradores ni profesionales, *ni a los oficiales u organizadores de uniones obreras cuando actúen como tales.*" (Bastardillas nuestras.)

El historial legislativo de esta ley indica que la Legislatura tuvo el propósito de excluir de las disposiciones de la Ley Núm. 379 a los oficiales y organizadores de uniones obreras en la misma forma en que ya se habían excluidos a los agentes viajeros, los vendedores ambulantes, los ejecutivos, los administradores y los profesionales bajo el criterio de lo difícil que resulta supervisar la jornada de trabajo en dichos grupos.

En el informe de la Comisión del Trabajo de la Cámara de Representantes de 4 de abril de 1963, se expresa lo siguiente:

"Propósitos del Proyecto

El P. del S. 435 enmienda el Artículo 19 de la Ley 379 de 15 de mayo de 1948, a los fines de eximir de la definición de empleado de dicha ley a los oficiales u organizadores de uniones obreras cuando actúan como tales. De esta manera los funcionarios de los sindicatos obreros estarán en la misma situación que los agentes viajeros, vendedores ambulantes, ejecutivos, administradores y profesionales que al presente están exentos de la definición de empleado según aparece en el Artículo 19 de la Ley 379 de mayo de 1948, enmendada."

Historial.—

En el caso de Francisco Medina Vega vs. Unión Obreros Cervecería Corona, etc. R-62-128, resuelto por el Tribunal Supremo de Puerto Rico el 30 de noviembre de 1962, se establece que, en ciertas y determinadas circunstancias, la relación entre el Presidente de un sindicato y este último, está investida de las características esenciales de la relación entre patrono y obrero, y que en estos casos, tal funcionario puede considerarse un empleado según se define dicha condición en el Artículo 19 de la Ley 379 de 15 de mayo de 1948, a los fines de la aplicación de las disposiciones de esta ley relativa a la jornada de trabajo.

Al aprobarse la Ley 379 de 15 de mayo de 1948, enmendada, se excluyó de la definición de empleado un número de personas cuya labor resulta extremadamente difícil de supervisar en cuanto a su jornada de trabajo diaria se refiere, aunque exista la relación de empleado y patrono. Así la ley exime de la definición de empleados a los agentes viajeros, los vendedores ambulantes, los ejecutivos, los administradores y los profesionales. Solo se plantea el hecho de lo difícil que resulta el supervisar y controlar la jornada de trabajo en dichas agrupaciones. En el caso de un funcionario ejecutivo de una unión o de un organizador sindical el control y supervisión de la jornada de trabajo resulta imposible de realizar y aún de precisar. Se plantea la interesante disyuntiva ética de ser juez y parte de un mismo proceso. Es un hecho conocido que el entusiasmo, la dedicación y convicción de un líder sindical puede llevarle a dedicarle todo su tiempo a las labores de su cargo, más allá de lo razonablemente necesario y de que la matrícula pudiera exigirle. Circunstancias propias de la política de grupos pudieran afectar la permanencia de un líder en su cargo. Lo que hasta ese momento

no se había planteado, siendo la naturaleza humana como es, pudiera entonces dramáticamente presentarse en forma de una reclamación por horas extras de una jornada de trabajo sobre la cual la matrícula no podía tener control. De prosperar este tipo de litigación en Corte al amparo de la decisión del Tribunal Supremo de Puerto Rico, el movimiento sindical se enfrentaría a una grave crisis. Por otro lado pudiera alegarse que este tipo de litigación quebranta de manera indirecta la política pública vigente que reconoce, estimula y protege la actividad sindical y las organizaciones sindicales. En este punto es de particular relevancia la Ley Núm. 513 de 30 de abril de 1946, que exime de embargo y ejecución los fondos y bienes de las organizaciones obreras. (Pág. 13 Alegato recurrido.)

En sentido similar se expresó la Comisión del Trabajo del Senado de Puerto Rico en su informe de 26 de febrero de 1963.

En la discusión del Proyecto del Senado 435, que al aprobarse se convirtió en la Ley Núm. 11 de abril de 1963, el Presidente de la Comisión de Trabajo de dicho cuerpo se expresó así:

"Sr. Carrasquillo: Están excluídos en cuanto a reclamación se refiere de la Ley que crea la Junta de Salario Mínimo. Están excluídos estos viajeros por que no se puede computar el tiempo que trabajan, porque un viajero o vendedor de estos ambulantes, pues, sale, hay veces a las seis de la mañana, y retorna a las diez de la noche. Si van a hacer una reclamación al patrono, por todo ese tiempo, pues, imagínese a cuanto ascendería una reclamación, y siguiendo esta línea de consulta están excluídos, para que no puedan hacer reclamaciones al patrono por ese concepto.

Lo mismo, entonces, ocurre con los Presidentes de Uniones, organizadores de uniones que están trabajando desde avanzadas hora de la mañana y luego, pues, terminan de trabajar tarde; y lo mismo los organizadores. Si se les va a computar todo ese tiempo que trabajan, pues, entonces desbancarían a las uniones de Puerto Rico. Y, entonces, se propone que estos organizadores y estos directores de uniones queden en las mismas condiciones en que están excluídos los vendedores." (Vol. 17, Tomo 1 (1963), pág. 339, *Diario de Sesiones*.)

De acuerdo con el Artículo VII de la Constitución y Reglamentos de la Unión demandada, los vocales (4) tenían los siguientes deberes: "desempeñarán todas las comisiones que se les confieran, velarán porque se cumplan todos los preceptos administrativos y todos los apartados de esta Constitución y cumplirán los acuerdos de la Junta de Directores y de la matrícula. Investigarán trimestralmente, del 20 al 30 de cada trimestre, las finanzas de la Unión y rendirán un informe de su labor a la matricula."

Surge del récord que gran parte de las labores realizadas por el recurrente están enmarcadas dentro de sus deberes como vocal y que realizó otras labores adicionales voluntariamente por razón de la proximidad de su residencia con las oficinas de la Unión. En su presupuesto de gastos y sueldos recomendado por la Junta de Directores, de la cual formaba parte el demandante, se aprobó un sueldo de $50.00 semanales para cada oficial. Según el demandante el "financiero" desglosó su sueldo en $20.00 semanales como sueldo y $30.00 semanales como dietas, y $10.00 para dietas los sábados y domingos. El demandante estaba ya acogido al Seguro Social. Conforme declaró el Presidente de la Unión, señor Pérez Roa, no era posible supervisar las labores rendidas por el demandante.

En virtud de lo expuesto concluimos que el demandante-recurrente no está cubierto por la Ley Núm. 379 de 1948, según enmendada, *y en su consecuencia que no erró el tribunal sentenciador al declarar sin lugar la demanda.*

Se dictará sentencia de conformidad.

El Juez Presidente, Señor Negrón Fernández, no intervino.