En el Tribunal Supremo de Puerto Rico

| Luis Rolón García y otros | |
| Recurrentes | Certiorari |
| V. | |
| | 99 TSPR 83 |
| Charlie Car Rental, Inc. y otros | |
| Recurridos | |

Número del Caso: CC-1997-0773

Abogados de la Parte Recurrente:    Lcdo. Víctor M. Rivera Torres
                                    Bufete Rivera Colón, Rivera Torres
                                    & Ríos Berly

Abogados de la Parte Recurrida:     Lcdo. héctor Saldaña Egozcue

Abogados del Dpto. Del Trabajo:     Lcda. Marilyn Rodas Mulero

Tribunal de Instancia, Sala Superior de Carolina

Juez del Tribunal de Primera Instancia: Hon. Ismael Almodóvar

Tribunal de Circuito de Apelaciones, Circuito Regional VII

Juez Ponente: Hon. Rodríguez García

Fecha: 6/2/1999

Materia: Reclamación de Salarios

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Rolón García y Otros

    Demandantes-Recurrentes

        vs.                CC-1997-773      Certiorari

Charlie Car Rental, Inc.,
y Otros

    Demandados-Recurridos

PER CURIAM

San Juan, Puerto Rico, a 2 de junio de 1999.

La co-recurrida Charlie Leasing Company, Inc., en adelante "Charlie Leasing", se dedica principalmente al alquiler de vehículos de motor en Puerto Rico. La co-recurrida Charlie Car Rental, Inc., es subsidiaria de la primera y ambas realizan negocios similares. Esta última, además, de manera accesoria disponía de la flota de vehículos mediante venta al público cuando las unidades no reunían los criterios establecidos por la empresa para el negocio de alquiler.

El 20 de septiembre de 1985, el recurrente Luis Rolón García, comenzó a trabajar para Charlie Car Rental en la fase del negocio que sólo

comprendía la venta de vehículos antes mencionada.[1] Tras nueve (9) años de trabajar para las recurridas, el 10 de mayo de 1994 Rolón García, su esposa Ruth Miriam Anaya Crespo y la sociedad de gananciales integrada por ambos, presentaron una querella contra las recurridas ante el Tribunal de Primera Instancia, Sala de Carolina, para reclamar el pago de horas extras trabajadas, y el pago correspondiente a las horas de tomar alimentos no disfrutadas, al amparo de la Ley de Horas y Días de Trabajo, Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 271 et seq. Además, reclamaron igual cantidad en concepto de penalidad, conforme a lo dispuesto en la Ley Núm. 379, supra. Se acogieron al procedimiento sumario para querellas laborales dispuesto en la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. sec. 3118 et seq. El 20 de mayo de 1994, las recurridas contestaron la querella y expusieron como única defensa que al amparo de la referida Ley Núm. 379, Rolón García era un administrador, según la definición del Reglamento Núm. 13 de la Junta de Salario Mínimo de Puerto Rico, infra, razón por la cual no le aplicaban las disposiciones de la Ley Núm. 379, supra.

Luego de varios trámites procesales, el tribunal de instancia celebró una vista a los fines de determinar si Rolón García era un empleado o un administrador. El

---

[1] El recurrente fue contratado por el entonces presidente de la compañía, Charles Christensen. Con anterioridad a ser contratado, Rolón García tenía varios años de experiencia en la venta de vehículos de motor.

tribunal referido también solicitó a las partes presentar sus respectivos memorandos de derecho. El 20 de marzo de 1996, luego de evaluar la evidencia testifical y documental, el foro de instancia emitió una sentencia parcial y resolvió que el recurrente era un empleado, razón por la cual le aplicaban las disposiciones de la Ley Núm. 379, _supra_. Según determinó el foro de instancia, en esencia durante el período de tiempo comprendido en la querella, Rolón García se dedicaba principalmente a la venta de vehículos de motor para Charlie Car Rental y a los trámites necesarios para ello. Sus labores principales y el tiempo dedicado a éstas eran las siguientes:

a. Atendía al público que visitaba el establecimiento del patrono querellado con el objetivo de comprar vehículos de motor que se encontraban para la venta. (Venta: 50% del tiempo de trabajo de Rolón García.)

b. Llenaba y tramitaba toda la documentación relativa a la venta, una vez ésta se realizaba. Ello incluía gestiones encaminadas al saldo de la deuda de la unidad, al gravamen de ésta, al traspaso del título del vehículo vendido en las instituciones y agencias correspondientes. Estas labores de llenar y tramitar documentos consumía 20% del tiempo de trabajo del vendedor. Otro 20% se dedicaba a hacer las gestiones correspondientes en las entidades financieras.

c. Efectuar depósitos producto de la venta en el Banco. Estas labores bancarias ocupaban 5% del tiempo de trabajo.

El restante 5% del trabajo de Rolón García se dedicaba a tareas como las siguientes:

d. Hacía contacto con los periódicos para la publicación de anuncios.

   e. Asistía a las reuniones que se celebraban los miércoles o, en ocasiones, una vez al mes. A las reuniones semanales asistían las personas cuyos puestos eran de gerentes así como otros empleados no clasificados como tales.

   f. Preparaba un expediente a cada automóvil del área de alquiler. El proceso consistía en sacar fotocopia de la licencia, copia de llaves, unir los documentos sobre garantía y archivar.

   g. Lavaba y acondicionaba la unidad a ser vendida en ocasiones, aun cuando no era su función principal.

   h. Daba transportación a los clientes de Charlie Leasing y Charlie Car Rental al aeropuerto, una vez éstos entregaban la unidad que habían arrendado, si existía la necesidad de que [é]l diera ese servicio.

Al analizar las tareas del querellante, el foro de instancia concluyó que las labores que Rolón García realizaba eran de naturaleza "manual", tareas a las que dedicaba el 95% de su tiempo de trabajo, y que no estaban directamente relacionadas con las normas de la dirección de la empresa. También encontró probado que las funciones del querellante no conllevaban ejercicio de discreción y juicio independiente sino que se limitaba a "seguir las pautas previamente establecidas para la venta de los automóviles cuya designación y precio habían fijado Christensen o Sierra"[2]. Aunque encontró probado que en los últimos años al querellante se le consultaba sobre el precio sugerido para la venta de las unidades, el precio mínimo final era

---

[2] Charles Cristensen ocupó el puesto de Presidente de Charlie Car Rental hasta el año 1989, año en el cual nombró a Juan P. Sierra Benítez como nuevo Presidente.

establecido por el Presidente. El querellante sólo tenía discreción para vender el vehículo sobre el precio previamente establecido pero necesitaba el consentimiento y la autorización expresa del Presidente para vender la unidad a un precio menor. El tribunal de instancia determinó, además, que Rolón García tenía experiencia dentro del campo de la venta de automóviles, trabajo que desempeñó durante los últimos veinte años.

Inconforme, la parte querellada presentó recurso de apelación ante el Tribunal de Circuito de Apelaciones. Alegó en síntesis, que el Tribunal de Primera Instancia había errado al no resolver que el querellante era un administrador. El 13 de noviembre de 1997, el foro apelativo expidió el auto solicitado y revocó al tribunal de instancia. Resolvió que en el desempeño de sus funciones, Rolón García cumplió con todos los requisitos establecidos en el Reglamento Núm. 13 de la Junta de Salario Mínimo, _infra_, para ser administrador. Al así hacerlo, modificó varias de las determinaciones de hechos de instancia y confirmó otras. En primer lugar, determinó que, una vez la compañía seleccionaba los vehículos que serían vendidos y establecía el precio mínimo para la venta, Rolón García era la persona encargada de dirigir toda la operación sobre la venta de los vehículos. Por tal razón, el foro apelativo concluyó que las funciones principales del querellante no eran manuales como concluyó el tribunal de instancia y que "[c]ualquier labor manual

que éste realizara era incidental o accesaria". Concluyó, además, que "[s]i bien Rolón García no participaba de la determinación de qué vehículos se iban a vender, si se le solicitaba su recomendación para la determinación de los precios en los que habrían de venderse los vehículos", por lo cual, "tenía necesariamente que ejercer un juicio independiente al hacer estas recomendaciones". El tribunal de apelaciones también modificó la determinación del foro de instancia en cuanto a la distribución del tiempo según las tareas realizadas por Rolón García y añadió una serie de labores que, según razonó, no habían sido consideradas por el tribunal. Determinó, pues, contrario a lo resuelto por el tribunal de instancia, que el querellante "invertía la mayor parte del tiempo en labores (de naturaleza no manual) relacionadas directamente con la dirección de la empresa".

El 22 de diciembre de 1997, Rolón García recurrió ante nos. Alegó, en síntesis, que el foro apelativo había errado al sustituir el criterio de apreciación de la prueba del Tribunal de Primera Instancia por su propio criterio; al acoger totalmente la versión de los hechos sometida por el querellado en su alegato de certiorari sin el beneficio de una exposición narrativa de la prueba; y al concluir, contrario al dictamen del foro de instancia, que el querellante era un administrador y no un empleado.

El 13 de marzo de 1998, expedimos el recurso. El 30 de junio de 1998, la parte peticionaria presentó su alegato.

El 31 de julio de 1998, la recurrida presentó el suyo. El 6 de agosto de 1998 la peticionaria presentó una dúplica a la réplica. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

I.

Tanto el patrono como el empleado en el caso de autos han trabado la controversia entre ellos al amparo estrictamente de la Ley de Horas y Días de Trabajo, <u>supra</u>, que regula lo concerniente con la jornada de trabajo de los empleados a quienes le aplica, así como el pago de horas extras. La Ley referida bajo la cual ha surgido el pleito ante nos, dispone cómo se pagará a los empleados que trabajan en exceso de la jornada regular de ocho (8) horas diarias e indica cuáles son las reclamaciones a las que tienen derecho. No obstante, por mandato legislativo expreso, esta Ley no incluye a los "ejecutivos, administradores ni profesionales, según estos términos sean definidos por la Junta de Salario Mínimo de Puerto Rico"[3]. 29 L.P.R.A. 288. Conforme a esta delegación, la Junta referida definió los tres términos mencionados mediante el Reglamento Núm. 13, <u>infra</u>. Nuestra intervención en esta etapa de los procedimientos se limita, pues, a revisar si, a la luz del Reglamento Núm. 13 de la Junta de Salario

---

[3] Mediante la Ley Núm. 180 de 27 de julio de 1998, se eliminó la Junta de Salario Mínimo de Puerto Rico y sus poderes se transfirieron al Departamento del Trabajo y Recursos Humanos.

Mínimo, <u>infra</u>, Rolón García es "empleado" o "administrador" de la parte querellada.[4]

En el Artículo III del Reglamento referido, aplicable a los hechos del caso de autos, se definía el término "administrador" como:

Cualquier empleado que reúna los siguientes requisitos:

(a)   que desempeñe trabajos de oficina o trabajos fuera de oficina que no sean de naturaleza manual, estando el trabajo directamente relacionado con las normas de la dirección de la empresa o con las operaciones generales del negocio del patrono o de los clientes del patrono; y

(b)   que usual y regularmente ejerza discreción y juicio independiente; y

(c)   1. que regular y directamente ayude al dueño de la empresa, o a una persona empleada en la capacidad de "administrador" o de "ejecutivo", según estos términos se definen en el presente reglamento; o

2. Que realice, solamente bajo supervisión general, trabajo de carácter técnico o especializado que requiera entrenamiento, experiencia o conocimientos especiales; o

3. que ejecute, solamente bajo supervisión general, encomiendas y tareas especiales; y

(d)   que no dedique más del 20%, o en el caso de un empleado de un establecimiento de comercio al detal o de servicio, que no dedique hasta el 40%, de las horas trabajadas en una semana de trabajo, a actividades que no estén directa o estrechamente relacionadas con el desempeño del trabajo descrito los Incisos (a), (b) y (c) de este Artículo III; y...

---

[4] Como puede observarse de los hechos relatados, no está ante nos el asunto que dilucidamos recientemente en <u>Vega v. Yiyi Motors, Inc.</u>, opinión del Tribunal de 30 de junio de 1998, 146 D.P.R. ___, 98 JTS 97.

El inciso (e) del Reglamento referido, que era alicable al período de la querella que comprendía los años 1985 a 1990, disponía lo siguiente durante ese tiempo:

> (e) que reciba por sus servicios una compensación fija o a base de por ciento u honorarios, equivalente a un sueldo semanal no menor de ciento treinta y cuatro ($134) dólares, excluyendo alimentos, vivienda u otros servicios. También significa cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en los incisos (a) y (b) de este Artículo III y que reciba por sus servicios una compensación fija, o a base de por ciento u honorarios, equivalente a un salario semanal no menor de doscientos ($200) dólares, excluyendo alimentos, vivienda u otros servicios. Tercera revisión.

Al período de la querella que comprendía los años 1990 a 1994, le aplicaban los incisos (e) y (f), que sustituyeron al anterior inciso (e), y que disponían lo siguiente:

> (e) que reciba por sus servicios una compensación fija o a base de por ciento u honorarios, equivalente a un sueldo semanal no menor de doscientos dólares ($200), excluyendo alimentos, vivienda u otros servicios.

> (f) también significa cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en los incisos (a) y (b) de este Artículo III y que reciba por sus servicios una compensación fija, o a base de por ciento u honorarios, equivalente a un salario semanal no menor de doscientos noventa y cinco dólares ($295), excluyendo alimentos, vivienda u otros servicios. Cuarta revisión.

Debido a que la querella comprende los años 1985 a 1994, es necesario analizar si Rolón García cumplió con los requisitos de "administrador" según definidos por las dos

versiones del Reglamento Núm. 13 vigentes durante ese período.

Anteriormente hemos señalado que la determinación de si un empleado es o no un "administrador" depende de la **concurrencia** de los requisitos enumerados en el artículo III del Reglamento Núm. 13. Almodóvar v. Margo Farms del Caribe, Inc., opinión de 14 de abril de 1999; Medina Vega v. Unión Obreros Cervecería, 86 D.P.R. 642 (1962). Posteriormente, y en referencia a los requisitos que definen el término "ejecutivo" que contempla el Reglamento aludido, señalamos en López Santos v. Tribunal Superior, 99 D.P.R. 325, a la pág. 330 (1970):

> [e]s por esta razón que la exclusión de un empleado de los beneficios de la legislación laboral debe ser clara y debe interpretarse restrictivamente. Esto implica que los requisitos de exclusión del Reglamento del Secretario del Trabajo, los cuales se encuentran unidos por la conjunción "y", deben acreditarse todos, no uno o algunos.

Veamos, pues, si Rolón García cumplía con **todos** los requisitos para ser "administrador" vigentes durante los períodos que comprende la querella.


## II.

Un análisis cuidadoso del expediente del caso de autos, nos lleva a concluir que Rolón García no cumplía al menos tres de los requisitos reglamentarios para ser considerado como un "administrador".

1.   **Naturaleza no manual del trabajo**:

   **Inciso (a) del Art. III del Reglamento Núm. 13**

   A poco que analizemos las determinaciones de hechos del foro de instancia en cuanto a las tareas realizadas por el querellante, acogidas por el foro apelativo y no controvertidas por la parte querellada, es evidente que Rolón García realizaba ordinariamente trabajos de naturaleza manual no relacionados con las normas de la dirección de la empresa. Casi la totalidad de su trabajo consistía en atender clientes interesados en comprar vehículos, y en tramitar los documentos y los formularios necesarios para efectuar las ventas de los vehículos, incluyendo sus licencias. El querellante firmaba estos documentos en calidad de vendedor y era necesaria la firma del Presidente de la compañía para que tanto la venta como el traspaso del vehículo fueran válidos. A Rolón García también le correspondía la apertura y el archivo del expediente del vehículo.

   Con arreglo a lo anterior, no podemos avalar la determinación del tribunal apelativo de que "... el señor Rolón García era la persona encargada de dirigir toda la operación sobre la disposición de los vehículos", por lo cual "es claro que sus funciones primordiales no eran manuales" sino que consistían en "dirigir la operación de la disposición de los vehículos", por lo que "cualquier labor manual que éste realizara era incidental o accesoria a esta función principal". Las referidas labores del

querellado, catalogadas como incidentales y accesorias por el foro apelativo, constituían, realmente, la principal función del querellante.

También erró el foro apelativo al concluir que el querellante era el responsable de dirigir la operación de la disposición de los vehículos. La fase crítica inicial de tal operación estaba a cargo de la alta gerencia de la compañía querellada así como las determinaciones finales sobre la venta de vehículos. A pesar de ello, el tribunal de apelaciones determinó que "el hecho de que las transacciones realizadas por Rolón García estuvieran sujetas a estos controles centrales en nada alteraban su condición de administrador". Apoyó esta determinación en nuestras expresiones en Abudo Servera v. A.T.P.R., 105 D.P.R. 728, 735 (1977), de que "[u]n empleado ejecutivo o un administrador no deja de serlo, no obstante, por el mero hecho de que sus decisiones y actuaciones estén sujetas a la aprobación de un empleado de superior rango." Pero resulta que tales expresiones nuestras no tienen el alcance que le dio el foro apelativo. Los hechos de Abudo Servera v. A.T.P.R., supra, son totalmente distintos a los del caso ante nos. En aquella ocasión nos encontrabamos ante querellantes que "dirigían o estaban de hecho encargados de las fincas que administraban". Sus funciones incluían, entre otras, la supervisión general y el cuido de la finca; escoger a los trabajadores, asignarles las tareas concretas a realizar y velar porque se hicieran correctamente; mandar

a los capataces y al listero; autorizar el trabajo de horas extras; estar a cargo de la nómina; y prepar un presupuesto quincenal, sujeto a aprobación central. Abudo Servera v. A.T.P.R., supra, a las págs. 734 y 735. Fue en este contexto particular que resolvimos que las obvias funciones de administración referidas no dejaban de tener tal carácter por el mero hecho de que dichas funciones estaban a su vez sujetas a la aprobación de un administrador de rango superior.

En el caso de autos, si bien es cierto que el trabajo realizado por Rolón García constituía un aspecto importante del negocio de la querellada, era la alta gerencia de la compañía la que tenía a su cargo las fases críticas y más importantes de la venta de los vehículos. La labor del querellante se limitaba a la rutina de atender los clientes, facilitarle los documentos debidamente cumplimentados una vez se realizaba una venta, y realizar otras tareas afines para completar la transacción.

2. **Discreción y Juicio Independiente**

**Inciso (b) del Art. III del Reglamento**

Las funciones de Rolón García no conllevaban ejercicio de discreción y juicio independiente **de manera usual y regularmente**. Como correctamente determinó el foro de instancia, las labores del querellado:

> se limitaban a seguir las pautas previamente establecidas para la venta de los automóviles cuya designación y precio habían fijado Christensen o Sierra. Rolón no tenía acceso a la

> información sobre criterios que éstos
> consideraban para la venta de la flota... sólo
> los presidentes tenían acceso a esa información y
> el contable en forma limitada.

Aunque en los últimos años al querellante se le consultaba sobre el precio sugerido para la venta de las unidades, el precio de venta final era establecido por el Presidente. Rolón García sólo tenía discreción para vender el vehículo por encima del precio previamente establecido, pero necesitaba el consentimiento y la autorización expresa del Presidente para vender la unidad a un precio menor.

Erró el foro apelativo al determinar que el querellante cumplía con el segundo requisito. El hecho de que Rolón García fuera consultado sobre el precio de venta no significaba que ese sería el precio final a ser determinado. Precisamente, el foro de instancia estableció, y no fue controvertido por el patrono, que el querellante:

> no tenía acceso a la información sobre los
> criterios que [los Presidentes] consideraban para
> la venta de la flota. Surge de la prueba
> testifical que s[ó]lo los Presidentes tenían
> acceso a esa información y el contable en forma
> limitada. Dichos criterios[,] según Christensen,
> eran: (a) el uso y la confiabilidad del carro (b)
> el valor residual en los libros (c) disponibili-
> dad de carros nuevos en el mercado (d) condición
> de la compañía de poder o no renovar la flota.

Es evidente que las meras recomendaciones sobre el precio para la venta de los automóviles que hacía Rolón García no constituían el ejercicio de juicio independiente usual y regularmente, al que se refiere el Reglamento Núm. 13. Eran cuatro los criterios utilizados para determinar el precio

de venta y la suma sugerida por Rolón García no era uno de ellos. No dudamos que la recomendación del querellado era tomada en la determinación final del precio pero ello, según las propias declaraciones de Christensen, no era uno de los criterios principales para fijarlo.

Por otro lado, si bien es cierto que Rolón García ejercía algún grado de discreción cuando contrataba servicios ajenos a la empresa, con el propósito de acondicionar las unidades para la venta y para labores relacionadas a su traspaso, es evidente que estas funciones discrecionales ocasionales no eran ni cuantitativa ni cualitativamente comparables con el resto de las tareas que realizaba el querellado. El hecho de que un trabajador realice alguna labor menor de tipo discrecional no lo convierte automáticamente en un "administrador". Sobre el particular, son acertados los comentarios de Delgado Zayas cuando expresa que "la discreción y juicio independiente que se exige debe ser real y sustancial sobre asuntos de consecuencia." R. N. Delgado Zayas, <u>Apuntes para el estudio de la legislación protectora del trabajo en el derecho laboral puertorriqueño</u>, 2da ed., San Juan, Puerto Rico, Ramallo Brothers Printing, Inc., 1996, a la pág. 36. Ciertamente, las labores realizadas por el querellado no tienen el alcance que el Reglamento Núm. 13 requiere para ser catalogadas como ejercicio de discreción y juicio independiente usual y regularmente.

2.    **Tiempo en otras labores**

**Inciso (d) del Art. III del Reglamento**

Conforme a sus determinaciones previas, el foro de instancia concluyó que Rolón García dedicaba aproximadamente 95% de su tiempo a trabajos manuales, por lo que no se cumplía el requisito del inciso (d) referido. Basándose en las funciones del querellado según detalladas por Christensen, el foro aludido determinó que esas funciones se distribuían de la siguiente forma:

    50% - venta (atender compradores potenciales)
    20% - tarea de llenar papeles
    20% - hacer gestiones con las entidades financieras
     5% - ir a los bancos
     5% - otras funciones no relacionadas con sus
          funciones principales

No obstante, el tribunal de apelaciones revocó esta determinación del tribunal de instancia y determinó que éste se había equivocado al hacer la distribución del tiempo de las labores realizadas por el querellante. Al así hacerlo, dispuso lo siguiente:

    [a]l determinar estos por cientos, el tribunal
    [de instancia] no considera una serie de labores
    que [Rolón García] realizaba tales como: a) el
    tiempo invertido para determinar el precio que le
    recomendaría al presidente para la venta de los
    automóviles; b) la creación de estrategias de
    venta; c) la contratación de servicios externos;
    d) las reuniones con el presidente y demás
    personal gerencial; entre otras.
    Una vez más erró el foro apelativo. Si bien es cierto

que Rolón García realizaba algunas tareas que no eran de naturaleza manual, la mayor parte de sus labores eran manuales. El tribunal de apelaciones, basándose en meras conjeturas, alteró las bien fundamentadas determinaciones

del ilustrado foro de instancia basadas en la prueba que tuvo ante sí. Lo hace sin siquiera haber tenido ante sí una exposición narrativa de la prueba que desfiló ante el foro sentenciador.

Es doctrina claramente establecida por este Tribunal que un tribunal apelativo no intervendrá con las determinaciones de hechos ni con la adjudicación de credibilidad que hizo el juzgador de los hechos, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto. Belk v. Martínez, Opinión de 30 de junio de 1998, 146 D.P.R. ___, 98 J.T.S. 92; López Vicil v. I.T.T. Intermedia, supra; Méndez v. Morales, Per Curiam de 15 de noviembre de 1996, 142 D.P.R. __, 96 J.T.S. 149; Oliveras, Inc. v. Universal Ins. Co., Opinión de 7 de noviembre de 1996, 141 D.P.R. __, 96 J.T.S. 145; Quiñones López v. Manzano Pozas, Opinión de 25 de junio de 1996 , 141 D.P.R. ___, 96 JTS 95; Monllor v. Soc. de Ganaciales, Opinión de 13 de junio de 1995, 138 D.P.R. __, 95 J.T.S. 77; Pueblo v. Bonilla Romero, 120 D.P.R. 92 (1987); Vélez v. Srio. de Justicia, 115 D.P.R. 533 (1984); Ortiz v. Cruz Pabón, 103 D.P.R. 939 (1975); Rodríguez v. Concreto Mixto, Inc., 98 D.P.R. 579 (1970). Recientemente enfatizamos que un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. López Vicil v. I.T.T. Intermedia, Per Curiam de 4 de abril de 1997, 142 D.P.R. __, 97 J.T.S. 42. En este

caso, el foro apelativo sustituyó sus propias apreciaciones de los hechos del caso por la del foro de instancia, sin fundamento suficiente para ello.

### III.

A la luz de lo señalado antes, es forzoso concluir que se cometieron los errores señalados ante nos por el querellante. Este no cumplía todos los requisitos reglamentarios para ser considerado como un "administrador".

Por los fundamentos antes expuestos, se dictará sentencia para revocar el dictamen del Tribunal de Circuito de Apelaciones y confirmar la determinación del Tribunal de Primera Instancia. Se devuelven los autos al Tribunal de Primera Instancia para que continúen los procedimientos, conforme a lo aquí resuelto.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Rolón García y Otros

    Demandantes-Recurrentes

        vs.                              CC-1997-773        Certiorari

Charlie Car Rental, Inc.,
y Otros

    Demandados-Recurridos

SENTENCIA

San Juan, Puerto Rico, a 2 de junio de 1999.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, se dicta sentencia revocando el dictamen del Tribunal de Circuito de Apelaciones, Circuito Regional VII de Carolina y Fajardo, y se confirma la determinación del Tribunal de Primera Instancia, Sala Superior de Carolina.

Se devuelven los autos al Tribunal de Primera Instancia para que continúen los procedimientos, conforme a lo aquí resuelto.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río concurre sin opinión. Los Jueces Asociados señores Negrón García y Hernández Denton están inhibidos.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo