El Juez Asociado Señor Kolthoff Caraballo
emitió la opi-nión del Tribunal.
El presente caso nos brinda la oportunidad de determi-nar cuál es el Derecho aplicable a una construcción extra-limitada, es decir, aquella que ha sido construida en parte en suelo propio y en parte en suelo ajeno.
*722 I
El 25 de marzo de 2004, el Sr. Ramiro Laboy Roque presentó una demanda sobre deslinde, amojonamiento e inscripción de parcela contra los miembros de la Sucesión Pérez Sánchez (Sucesión). La Sucesión es dueña a título de herencia de la Parcela 34 de la Comunidad María Jiménez en el barrio Hato Nuevo del municipio de Gurabo. Por su parte, el Sr. Ramiro Laboy, su hermano Víctor Laboy y la hija de este, Myrna Laboy, son usufructuarios de la Parcela 35-A de la misma comunidad, ya que esta pertenece en nuda propiedad al Departamento de la Vivienda de Puerto Rico. En dicha parcela, estos tienen construidas sus res-pectivas residencias.
Las Parcelas 34 y 35-A son colindantes y surgen de la parcelación que hiciera el Departamento de la Vivienda para crear la comunidad antedicha. Ahora bien, por varios años las partes han tenido controversias en torno a la fija-ción de los linderos entre ambas parcelas.
De acuerdo con las determinaciones de hecho del Tribunal de Primera Instancia, en el 1994 el Sr. Ramiro Laboy Roque solicitó el título de propiedad para la Parcela 35-A. No obstante, dicha solicitud fue denegada por existir en la parcela dos residencias.(1) Más adelante, en 1997, su her-mano Víctor Roque solicitó los permisos de construcción necesarios para ampliar su residencia y, posteriormente, comenzó a construir lo que se convirtió en la tercera es-tructura de la parcela. Esa estructura es la residencia de su hija, la Sra. Myrna Laboy.
El 30 de enero de 2003, los señores Víctor Laboy, Juan B. Pérez, Francisco Pérez y Humberto Meléndez (ingeniero del Departamento de la Vivienda), y las Sras. Olga Pérez y Myrna Laboy, comparecieron ante el Tribunal de Primera *723 Instancia, Sala Municipal de Gurabo, en mi procedimiento al amparo de la Ley Núm. 140 de 23 de julio de 1974, conocida como Ley de Controversias y Estados Provisiona-les de Derecho, 32 L.P.R.A. see. 2871 et seq. En febrero de ese año, dicho tribunal informó a los comparecientes que acudieran a una Sala Superior mediante una acción ordi-naria de deslinde, ya que la colindancia de ambas parcelas no estaba clara.(2)
Así las cosas, el 25 de marzo de 2004 el Sr. Ramiro La-boy Roque presentó la demanda sobre deslinde contra la Sucesión, titulares de la Parcela 34, y contra el Departa-mento de la Vivienda. Posteriormente, en noviembre de 2006, el señor Laboy Roque presentó una demanda enmen-dada e incluyó una nueva alegación. Señaló que había construido de buena fe una estructura en la Parcela 35-A que podría ocupar parte de la Parcela 34. En lo pertinente, solicitó que, en caso de haber invadido parte de la Parcela 34, se aplicaran las disposiciones del Código Civil relativas a la figura de la accesión y que benefician al edificante de buena fe.
Los demandados contestaron la demanda enmendada y, entre otras cosas, negaron la alegación del demandante en torno a que si la estructura del demandante invadía la Parcela 34 esta había sido construida de buena fe. Durante el proceso judicial se presentó evidencia testifical, así como documental, con la que se intentó aclarar los linderos de ambas parcelas. Del expediente surge un plano preparado alegadamente por el Ing. Humberto Meléndez De Jesús el 29 de enero de 2003, que refleja la existencia de solo dos estructuras en la Parcela 35-A y una estructura en la Par-cela 34. En abril de 2005, por orden del Tribunal de Pri-mera Instancia, el ingeniero Meléndez intentó realizar el replanteo de los puntos de colindancia entre ambas parcelas. Sin embargo, debido a la discordia entre ambas familias, no pudo lograrlo.(3)
*724 No obstante, según surge de las determinaciones de he-cho del foro primario, el ingeniero Meléndez De Jesús pudo realizar el replanteo de los puntos de colindancia el 27 de septiembre de 2005. Para realizar la mesura, consultó el plano original de la parcelación de 1944 y encontró algunos errores en los puntos de colindancia. En lo pertinente, sos-tuvo que cuando se preparó dicho plano los instrumentos de medición no eran tan exactos como ahora y atribuyó a esto los errores en los puntos de colindancia.
Así, en abril de 2008, luego de aquilatar toda la prueba, el Tribunal de Primera Instancia declaró “ha lugar” la de-manda de epígrafe. En esencia, dispuso que la estructura construida en la Parcela 35-A donde reside la Sra. Myrna Laboy comenzó a construirse como una ampliación de la casa del señor Laboy Roque. Además, de acuerdo con el plano presentado por el Ing. Ismael Carrasquillo —perito ingeniero de la familia Laboy— el foro sentenciador reco-noció que la estructura construida invadía en forma de triángulo una pequeña área en dos puntos de la Parcela 34. Asimismo, expresó que no se habían configurado los ele-mentos requeridos para los constructores de mala fe, ya que la referida estructura se había construido cuando to-davía no existía una determinación del Departamento de la Vivienda sobre la colindancia exacta de las parcelas. Además, la estructura se construyó dentro de los límites marcados por una verja de cemento y “cyclone fence” que dividía ambos predios y que llevaba más de 30 años de construida. Sin embargo, en la acción de deslinde se reco-noció que dicha veija estaba en su totalidad dentro de la Parcela 34. Según los ingenieros Carrasquillo y Meléndez, la verja y los triángulos de la casa de la Sra. Myrna Laboy invaden 149.475 me de la Parcela 34 a lo largo del lado norte.
Por otro lado, el señor Pérez, uno de los demandados del pleito, reconoció que la tercera estructura se construyó en el 2002. Ante eso, nunca se presentaron querellas en la *725 Administración de Reglamentos y Permisos (A.R.Pe.) sobre la ampliación de la verja o la construcción.
Por último, conforme a la recomendación de los ingenie-ros que testificaron en corte, el Tribunal de Primera Ins-tancia ordenó que a la Parcela 35-A se le descontara la misma cantidad de terreno que la estructura de ésta invade en la Parcela 34 y se le sume a la cabida de esta última. Ello, porque de esa forma las parcelas resultarían con la misma cantidad de terreno con la que contaban originalmente.(4)
Inconformes, los propietarios de la Parcela 34 —la Su-cesión— acudieron al el Tribunal de Apelaciones. Dicho foro revocó el dictamen del foro primario y concluyó que la residencia de la Sra. Myrna Laboy había sido construida de mala fe, porque esta se construyó en suelo ajeno luego de haber comenzado el litigio.
Por no estar conforme con el dictamen antedicho, el Sr. Ramiro Laboy acudió este Tribunal y señaló los errores siguientes:

PRIMER ERROR:

“Erró el Tribunal de Apelaciones al Concluir que Myrna Laboy es una edificante de mala fe, revocando la determinación del Tribunal de Primera Instancia, en ese sentido, basado solo en un pieza de evidencia. Cuando la demás evidencia documental y tes-tifical SOSTIENEN LA DETERMINACIÓN DEL TRIBUNAL DE PRIMERA Instancia.”

SEGUNDO ERROR:

“Erró el Tribunal de Apelaciones al concluir que el Tribunal de Primera Instancia cometió error manifiesto en la apreciación de LA PRUEBA Y QUE LA CONCLUSIÓN DE EDIFICANTE DE BUENA FE NO CONS-TITUYE EL BALANCE MÁS RACIONAL Y JUSTICIERO EN LA APRECIACIÓN DE LA PRUEBA.”(5)
*726 II
Las confusiones con los límites de los inmuebles pueden acarrear controversias sobre las construcciones que exce-dan los linderos de fincas colindantes. En consecuencia, el caso de autos nos brinda la oportunidad de expresarnos en detalle en tomo a la figura que trata este asunto y que se conoce como “construcción extralimitada”.(6)
De entrada, debemos exponer lo dispuesto en nuestro Código Civil en torno a la figura de la accesión. El Art. 287 dispone que “[l]a propiedad de los bienes, ya sean muebles o inmuebles, lleva consigo el derecho por accesión, a todo lo que ellos producen, o se les une o incorpora, natural o artificialmente”.(7) Es decir, la accesión implica el “derecho a un incremento patrimonial a consecuencia de que ya se tiene la propiedad de ciertos bienes, y lo que se adquiere es lo que los bienes producen, o se les une o in-corpora”, natural o artificialmente.(8)
Conforme a esta disposición, los Arts. 294 a 309 del Código Civil regulan la accesión de inmuebles.(9) El Art. 294 reconoce como regla general que todo lo que se edifica, planta o siembra en predios ajenos, así como las mejoras o reparaciones hechas en ellos, pertenece al dueño de esos predios, sujeto a las demás disposiciones que regulan este tipo de accesión.(10) Asimismo, el Art. 297 regula los casos en los que se ha construido una edificación de buena fe en suelo ajeno.(11) Ante esas circunstancias, el *727 dueño del terreno tendrá derecho a hacer suya la obra, previo el pago de la compensación establecida en dicho ar-tículo; a obligar al que construyó a pagar el precio del te-rreno, o a no ejercitar ninguna de las acciones anteriores(12) De igual forma, el edificante de buena fe ten-drá derecho a la compensación establecida en el referido Axt. 297, así como a retener la posesión de lo edificado mientras no se le compense(13) En cambio, el que edifica de mala fe no tiene derecho alguno sobre lo edificado ni a una compensación. El dueño del terreno puede hacer suya la edificación o, incluso, puede ordenar la demolición de lo edificado a costa del que edificó de mala fe(14)
Lo antes expuesto se sustenta en el conocido principio superficies solo cedit, por el cual el suelo es lo principal y lo edificado es lo accesorio. Es decir, al adjudicar al suelo la principalidad, este absorbe la titularidad de lo allí edificado (lo accesorio)(15) Es norma claramente establecida que de este principio deriva la existencia de una cosa que ha de tenerse por principal y de otra accesoria que, al unirse, forman un ente indivisible(16) Por consiguiente, el dueño del suelo en el que se construye una estructura obtiene la propiedad de lo incorporado. Sin embargo, es necesario señalar que el Art. 297 solo regula los casos en que toda la construcción recae en suelo ajeno. Nuestro Código Civil no ha previsto el caso en el que la construcción se realice en una finca propia pero excediendo sus linderos, por lo que el suelo solo es ajeno en parte.
Es muy difícil aplicar las reglas relativas a la construc-ción en suelo ajeno a la construcción simplemente extra-limitada. Por ejemplo, si el edificante ha actuado de buena *728 fe, no tendría sentido aplicarle el Art. 297, supra, porque conllevaría a que el dueño del terreno ajeno adquiriese por accesión toda la edificación. Es evidente que lo anterior sería un absurdo, porque no toda la construcción está sita en suelo ajeno. De igual forma, no tendría sentido que el dueño del suelo ajeno obtenga la titularidad de la porción extralimitada y así pase a ser copropietario de la edificación. Incluso, aplicar la normativa antedicha sobre la accesión a los casos del edificante de mala fe implicaría la demolición de toda la estructura, incluyendo la porción que se encuentra en suelo propio.
En fin, en el supuesto de una construcción extralimi-tada, ¿qué principios legales han de regir? ¿Qué obtendría el edificante y que obtendría el dueño del suelo ajeno? Para poder disponer de la laguna legal que encierra nuestro or-denamiento al respecto, es importante reconocer que en el derecho comparado podemos encontrar algunas normas que han contemplado el asunto en controversia. Veamos.

España

El Código Civil de España, de donde proviene gran parte del nuestro, posee la misma laguna legal con relación a los casos de construcciones extralimitadas. En 1908, el Tribunal Supremo español aplicó el Art. 361 del Código Civil español —análogo al Art. 297 nuestro— a una cons-trucción extralimitada.(17) Sin embargo, desde mediados del siglo pasado la jurisprudencia española, así como los tratadistas, ha creado una doctrina altamente reiterada que reconoció la inaplicabilidad del referido artículo y ha llenado el vacío legal resultante. En la Sentencia de 31 de mayo de 1949, el Tribunal Supremo español finalmente re-conoció que el Art. 361 y el principio superficies solo cedit no aplican a las construcciones extralimitadas, “ya que *729 ellos carecen de la base común a los supuestos para los que están establecidos”.(18)
De esa forma, dicho dictamen reconoció que el Art. 361 y subsiguientes del Código Civil español no aplican a los pro-blemas ocasionados por la construcción extralimitada. Así, pues, la Alta Curia española declaró que “por la notoriedad del mayor valor e importancia, que se han de reconocer, por sus condiciones y destino, al edificio construido, unido al suelo propio del edificante demandado, sobre la parte de terreno ajeno invadido [de buena fe] por la construcción, tiene aquél derecho a adquirir esta porción mediante el pago de su precio ...”.(19) Es decir, la solución judicial reco-noció un tipo de accesión a la inversa a aquella construc-ción extralimitada de buena fe. Por consiguiente, si el edi-ficante ha procedido de buena fe, la construcción no debe ser demolida ni dividida; más bien el suelo parcialmente invadido pertenecerá por accesión al dueño de la estruc-tura porque ha pasado a ser un todo indivisible junto con dicha estructura(20) Ahora bien, en compensación, “el pro-pietario del terreno invadido será indemnizado por el pre-cio del suelo ocupado, más los daños y perjuicios que se le hayan ocasionado”.(21) El pago del precio del suelo ocupado se sustenta en la aplicación parcial del Art. 361 del Código Civil español, mientras que el pago de los daños se en- *730 tiende que surge del principio básico dispuesto en el Art. 1902 del mismo Código.(22)
La accesión invertida se configura como una excepción al principio superficies solo cedit expuesto en el Art. 361 del Código Civil español. Por ello, la doctrina española ha en-tendido que dicho artículo no debe aplicarse con total rigi-dez, sino que se deben establecer espacios intermedios.(23) Así, en los casos de construcciones extralimitadas, la doc-trina utiliza el principio accesorium sequitur principóle, que surge de los Arts. 375, 376 y 377 del Código Civil es-pañol, los cuales se refieren a la relación de principalidad y accesoriedad entre dos cosas. Este principio supone varios criterios: primero, “el destino económico de la cosa (art. 376 del Código Civil)”; segundo, y en defecto del anterior, “se acude al valor pecuniario considerándose principal la cosa de mayor valor”, y como último criterio, “se acude a la cosa de mayor volumen (art. 377 del Código Civil)”.(24)
Conforme a lo anterior, en la Sentencia de 15 de junio de 1981, el Tribunal Supremo español señaló, al tratar la fi-gura de la accesión invertida, que
... su aplicación es, en nuestro sistema, una excepción a la regla general en la materia de “superficie solo cedit” recogida en el art. 361 del [Código Civil], que es sustituida por la de “accesorium cedit principali”, atribuyendo la calidad de principal a lo construido cuando su importancia y valor superan al de la parte del suelo (o subsuelo) invadido; cumplimiento, del que habrá que decidir la autoridad judicial .... (Énfasis suprimido.)(25)
Con lo anterior, la doctrina española ha propugnado la accesión invertida como la medida más justa para atender los casos de construcciones extralimitadas de buena fe. El *731 Tribunal, en su decisión de 1949, fundamentó su dictamen en los principios generales del Derecho, especialmente en razones de equidad.(26) De esa forma, se excluyeron las fór-mulas antieconómicas que conducen a la demolición del edificio construido.(27) “[L]a finalidad de la accesión inver-tida es evitar destruir lo edificado o crear una copropiedad o un derecho de superficie.”(28) Así, se intenta resolver las controversias “en atención a razones de política económica, social y de buena vecindad ...”.(29) Como comenta Diez-Picazo, “[l]a solución más justa es conceder a la autoridad judicial la facultad de atribuir lo edificado al que de buena fe lo haya hecho, compensando al otro propietario con el pago del precio y la indemnización de los daños y perjuicios”.(30)
La solución española no solo se ha consolidado en la jurisprudencia posterior, sino que se han precisado los cri-terios aplicables a este tipo de controversia. Por ejemplo, en la Sentencia de 22 de marzo de 1996, el Tribunal Supremo español estableció con claridad los cinco criterios que deben concurrir para que se dé la figura de la accesión invertida por construcción extralimitada, a saber:
a) que quien la pretenda sea titular de lo edificado; b) que el edificio se haya construido en suelo que en parte pertenece al edificante y en parte es propiedad ajena; c) que las dos partes del suelo formen con el edificio un todo indivisible; d) que el edificio unido al suelo del edificante tenga una importancia y valor superior a los del suelo invadido; y e) que el edificante haya procedido de buena fe. (Enfasis suprimido.)(31)
El primer criterio es un principio claro de que solo los *732 titulares de la edificación extralimitada son los que pueden solicitar la porción del terreno invadido por vía de la acce-sión invertida. (32) No obstante, como señala el inciso (b), es importante que el edificante también sea el titular del te-rreno, porque de lo contrario se crearía un problema de copropiedad, lo que precisamente la doctrina busca evitar. El segundo, exige un supuesto de extralimitación, es decir, que la edificación tiene que estar construida en parte en terreno propio y en parte en terreno ajeno. Esto incluye las extralimitaciones tanto en el subsuelo como en el vuelo del terreno ajeno.(33) Como tercer criterio se señala que la construcción extralimitada tiene que formar un todo indivisible con el suelo ajeno en el que se sustenta. Conforme a lo anterior, la doctrina hace referencia sólo a las edificacio-nes y, así, excluye las plantaciones o siembra, ya que estas últimas no cumplen con el requisito de indivisibilidad. (34) Además, de ser divisible se podría entender como un su-puesto típico de la accesión de una construcción en suelo ajeno.
Por su parte, el cuarto criterio señala que el edificio que se extralimita en suelo ajeno tiene que ser de un valor superior al terreno invadido. En ese sentido, la jurispru-dencia española ha sostenido que el valor a computarse es el del edificio en su totalidad y éste se contrapondrá al valor de la porción de terreno invadido.(35) Ello acarrea el que en la mayoría de las ocasiones sea difícil no cumplir *733 con ese requisito. La lógica de este criterio descansa en que sería un contrasentido económico que el remedio de la ac-cesión invertida sea peor que la destrucción de la porción extralimitada.
Por último, está el criterio de que el edificante haya ac-tuado de buena fe. El Código Civil español no define el concepto de buena fe en asuntos de accesión, por lo que la doctrina acude a los Arts. 433 y 1950 de dicho Código. Así, conforme al análisis de ambas disposiciones, se entiende que es un edificante de buena fe quien “ignore que el te-rreno en el que está edificando es ajeno”.(36) Ahora bien, como parte del criterio de la buena fe, en varias Sentencias del Tribunal Supremo español se ha señalado la necesidad de que el titular del predio invadido no se haya opuesto, porque esto anularía la buena fe del edificante.(37) Ello, porque para que la invasión del edificante sea de buena fe “es indispensable que el propietario que sufra la invasión no se haya opuesto a su ejecución oportunamente ...”. (En-fasis suprimido.(38) En contraste, hay otra vertiente que entiende que la oposición del dueño del terreno invadido es un elemento indispensable, adicional e independiente a la buena fe del edificante que se extralimita. (39) La oposición del dueño del terreno invadido se ve como un factor autó-nomo que impide que se produzcan los efectos de la acce-sión invertida y no un elemento de la buena fe.
Por su parte, en el caso del edificante de mala fe, hay un sector de la doctrina que entiende que el dueño del terreno invadido puede optar entre dos opciones: exigir al edifi-cante el precio del terreno más los daños sufridos o adqui- *734 rir todo el edificio y el suelo ajeno que ocupa, mediante la compensación económica que fijen los tribunales conforme al Art. 362 del Código Civil español.(40) Por otro lado, a base de un argumento construido sobre los Arts. 361 y 363 del Código Civil español, Albaladejo propone que el dueño del terreno invadido pueda optar a que se le pague el valor del terreno invadido o exigir la demolición de lo construido so-bre él; en ambos supuestos la indemnización conlleva los daños que la invasión haya causado.(41) Sin embargo, la postura mayoritaria reconoce que el dueño del terreno puede ejercitar el derecho que le concede el Art. 363 del Código Civil español (análogo al Art. 299 nuestro) y solici-tar la demolición de la porción que invade su terreno.(42) Ello, porque de su mala fe el edificante no puede derivar ningún beneficio excepcional.(43)
En los supuestos en que tanto el dueño del terreno in-vadido como el edificante hayan obrado de mala fe, la doc-trina sostiene que aplica el Art. 364 del Código Civil español.(44) En otras palabras, cuando concurre la mala fe de ambos, sus derechos serán los mismos que estos ten-drían si hubieran actuado de buena fe.

Otras jurisdicciones

En Italia, el Código Civil regula la construcción extrali-mitada y reconoce la figura de la accesión invertida. El Art. 938 del Código Civil italiano señala que “si en la construc-ción de un edificio se ocupa en buena fe una porción del fondo colindante, y el propietario de éste no se opone den- *735 tro de tres meses del día en que inició la construcción, el juez, considerando las circunstancias, puede asignar al constructor la propiedad del edificio y del terreno ocupado. El constructor tendrá que pagar al propietario del terreno el doble del valor de la superficie ocupada, y además in-demnizar los daños”. (Traducción nuestra.)(45) Esta dispo-sición busca garantizar el interés en el desarrollo de las construcciones y, a su vez, tutelar la buena fe del constructor versus la mala fe del propietario del suelo invadido, quien después de comenzada la construcción o cuando esté terminada sin su oposición, podría reclamar la demolición o su adquisición a base de los principios de accesión.(46)
De acuerdo con el artículo reseñado, el constructor tiene que haber edificado de buena fe y que el propietario del suelo invadido no se haya opuesto dentro de los tres meses desde que inició la construcción. La doctrina italiana ha reconocido que la buena fe del constructor no debe confun-dirse con la buena fe del poseedor, porque la ley no re-quiere que el constructor posea de buena fe el terreno ocu-pado, sino que ignore que construye en terreno ajeno.(47) No obstante, la propiedad de la porción del edificio cons-truido en suelo ajeno, así como la porción de suelo inva-dida, solo será del constructor una vez se emita una deci-sión judicial al respecto.(48) En otras palabras, la transferencia de la propiedad del terreno no se da por el hecho de la construcción, sino por la sentencia del juez, la cual debe considerar la oportunidad de que opere la *736 transferencia. Así, si procede la transferencia, el constructor estará obligado a indemnizar al dueño del terreno in-vadido los daños que su construcción le haya causado y a pagarle el doble del valor del terreno ocupado.
Por otro lado, el Art. 1343 del Código portugués es similar al precepto italiano, excepto que el constructor no está obligado a pagar el doble del valor de la porción del terreno invadido, sino simplemente su valor. Además, como parte de la indemnización en daños, se incluirá la eventual de-preciación del terreno restante.
En el caso del Código Civil suizo, su Art. 674 también reconoce el que un constructor de buena fe pueda adquirir la propiedad de la porción de terreno invadido. Dicho pre-cepto dispone que la construcción que se extralimita per-manece como parte integral del inmueble del que parte cuando su propietario tiene un derecho real a su subsistencia. Asimismo, el derecho sobre dicha extralimi-tación será inscrito en el Registro como servidumbre. La disposición suiza señala que si “la edificación en exceso se realizó sin derecho, y el peijudicado, no obstante conocerla, no se opuso a ella oportunamente, el constructor que haya procedido de buena fe adquiere un derecho real sobre ella o sobre la propiedad del suelo previa la correspondiente indemnización”.(49)
Por su parte, aunque en los casos de construcciones ex-tralimitadas los derechos romano y común aplicaban rigu-rosamente el principio superficies solo cedit, el Código Civil alemán rechazó seguir esa vertiente. Los Arts. 912 a 916 disponen que el propietario tiene que tolerar las construc-ciones que invadan su terreno si no ha mediado culpa del constructor.(50) La doctrina alemana sostiene que el deber *737 de tolerar las construcciones extralimitadas se da si: (1) la construcción erigida ha traspasado los límites del solar propio; (2) el constructor es el propietario o copropietario de la finca cuyos límites pasa la construcción; (3) el que construye no ha incurrido en dolo ni culpa lata al construir, y (4) el vecino facultado para protestar ha guardado silencio.(51)
La concurrencia de estos supuestos tiene varios efectos. Primero, el propietario invadido que calla ha de tolerar la construcción extralimitada. Segundo, conforme las disposi-ciones del Código Civil alemán, el deber de tolerancia se compensa con un derecho a la indemnización pecuniaria. El propietario de la finca invadida puede exigir una renta en metálico pagadera por anualidades anticipadas. Por úl-timo, la superficie invadida por la construcción ajena con-tinuará siendo propiedad de aquel a quien pertenecía antes de la extralimitación. No obstante, el Art. 915 del Código Civil alemán otorga al propietario del suelo inva-dido un derecho a que el constructor se haga cargo del suelo invadido y exigir en cualquier momento que se le pague su valor a cambio de trasmitir la titularidad de la superficie invadida. (52)
í — H HH I — I
A. Como ya hemos visto, la tendencia que promueve el uso de la figura de la accesión invertida en supuestos de construcciones extralimitadas de buena fe ha sido amplia-mente acogida en las jurisdicciones civilistas. Ahora bien, en el caso de Puerto Rico, adelantamos que el Código Civil no regula dichos supuestos. Por tal razón, ante el vacío legal existente, nos corresponde resolver la controversia *738 conforme a la equidad y a los principios generales del Derecho. (53)
El principio superficies solo cedit dispuesto en nuestro Código Civil es muy rígido para resolver de forma justa un asunto de extralimitación. En su momento, dicho principio expresó la relevante función de la tierra como un bien capital de mayor valor. (54) Sin embargo, ello no tiene mucho sentido en el mundo actual, porque la mayoría de las veces lo construido puede tener mayor valor que el suelo en el que está sito.(55) En consecuencia, al constructor que se ex-tralimita de buena fe en suelo ajeno se le ha reconocido un derecho de accesión invertida que se fundamenta princi-palmente en la relevancia social de la vivienda, el alto costo de ésta y otras construcciones, y en lo insensato que sería destruir lo que tanto valor social y económico tiene.(56)
Por tal razón, adoptamos la posición española que reconoce la accesión invertida por estimar que es la que reconcilia mejor los intereses en conflicto. De esta forma, adoptamos los requisitos elaborados por la doctrina española, que deben concurrir para que se dé la accesión invertida. Estos requisitos son: (1) que quien pretenda la accesión invertida sea el titular de lo construido; (2) que el edificio se haya construido en parte en suelo ajeno y en parte en suelo que pertenezca al edificante; (3) que las dos partes del suelo formen con el edificio un todo indivisible; (4) que el edificio, unido al suelo del edificante, tenga una importancia y un valor superior a los del suelo invadido, y (5) que el edificante haya procedido de buena fe.
La norma que anunciamos hoy no es ajena a nuestra jurisdicción. En efecto, en el caso Marchand v. Montes, *739 78 D.P.R. 131, 142 esc. 9 (1955), este Tribunal se refirió,, por primera vez, a la figura de la extralimitación al hacer la distinción siguiente:
El presente no es un verdadero caso de extralimitación, es decir, no es uno en que el dueño de un solar construye en éste y por error o inadvertencia se extralimita y edifica de buena fe en parte en solar ajeno. En tal caso las consecuencias, de or-dinario, son distintas. Véase la Sentencia del Tribunal Supremo de España de 31 de mayo de 1949, 26 Jur. Civ. (nueva serie), pág. 1090.
Así, no solo mencionamos la figura de la extralimita-ción, sino que reconocimos la solución provista por la juris-prudencia española, particularmente lo resuelto en la Sen-tencia del Tribunal Supremo español de 31 de mayo de 1949. En dicha sentencia, la Alta Curia española reconoció la inaplicabilidad de las disposiciones de la accesión a los supuestos de extralimitación y, a su vez, reconoció la acce-sión invertida como solución en equidad.
Además, la norma anunciada ha sido ampliamente re-comendada por sectores de la academia puertorriqueña. Por ejemplo, el Prof. José Ramón Vélez Torres había expre-sado que ante un problema de construcción extralimitada, este Tribunal debía brindar una solución conforme a la re-gla establecida por la jurisprudencia española y los códigos europeos.(57) Por su parte, el Prof. R. Elffén Bernier, al analizar la solución provista por la doctrina española, se-ñaló que “[a]l mismo resultado puede y debe llegarse en Puerto Rico siguiendo los mismos razonamientos del Tribunal Supremo de España”.(58) De igual forma, el trata-dista Vázquez Bote cita con aprobación la solución doctri-naria de utilizar la accesión invertida en los supuestos de construcciones extralimitadas de buena fe.(59)
*740 B. Ahora bien, es importante destacar los criterios que conforman la buena y mala fe del edificante que se ha extralimitado, así como sus consecuencias. Entre los artículos del Código Civil que tratan la accesión, ninguno define lo que constituye la buena fe al edificar. Solo contamos con las expresiones de los Arts. 363 y 1850 del Código Civil. El primero, define al poseedor de buena fe como aquel “que ignora que en su título o modo de adquirir exista vicio que lo invalide”.(60) En cambio, el Art. 1850 define la buena fe del poseedor en los supuestos de prescripción adquisitiva como “la creencia de que la persona de quien recibió la cosa era dueña de ella, y podía transmitir su dominio”.(61)
Al igual que en nuestra jurisdicción, en España se han enfrentado al hecho de no contar con una definición en el Código Civil para la buena fe de un edificante. Ante esto, Diez-Picazo comenta que la buena fe significa:
“... que el que edifica, planta o siembra en terreno ajeno o con materiales ajenos o el que emplea para su obra una mate-ria ajena o el que mezcla con la propia una cosa ajena, ignora por error excusable que las cosas son ajenas y cree que son propias o, por lo menos, cree tener sobre ellas un derecho que le permite realizar aquellos actos”.(62)
De esta forma, en los casos de construcciones ex-tralimitadas se entenderá que el edificante es de buena fe cuando ignore que el terreno en el que está construyendo es ajeno.(63) No obstante, entendemos que como parte del criterio de la buena fe, en el caso de un edificante que se extralimita, es necesario que el dueño del terreno invadido no se haya opuesto oportunamente. Ello es cónsono con la postura española mayoritaria y con lo dispuesto en los Códigos Civiles europeos. Por consiguiente, la buena fe del *741 edificante que se extralimita en la construcción, junto a los demás requisitos, tiene los efectos que ya hemos men-cionado.
Por otro lado, conforme a la doctrina mayoritaria, entendemos que en los supuestos en los que el edificante construya de mala fe, el dueño del terreno invadido puede ejercitar el derecho que le concede el Art. 299 del Código Civil, supra, por analogía. Es decir, este puede exigir la demolición de la porción invasora o demolerla, en cuyo caso los gastos que ocasione tal demolición deberá satisfacerlos el edificante de mala fe.(64) No obstante, adoptamos la postura de Albaladejo en cuanto reconoce al dueño del terreno invadido no solo exigir la demolición o demoler la porción que se extralimita en su terreno a costa del edificante, sino que le reconoce la opción de poder exigir la compra del terreno invadido más los daños. En el caso de que tanto el edificante como el dueño del terreno actúen de mala fe, aplica por analogía lo que dispone el Art. 300 del Código Civil, 31 L.P.R.A. see. 1167. De esa forma, se entenderá que ambos actuaron de buena fe. Es de notar que el dueño del terreno actúa de mala fe cuando “el hecho se hubiere ejecutado a su vista, ciencia o paciencia, sin oponerse”.(65)
C. Por último, debemos señalar cuáles son las consecuencias que enfrentaría el edificante que al construir se extralimita de buena fe, pero no cumple con alguno de los otros cuatro criterios hoy adoptados. En primer lugar, en los supuestos en los que el edificante no sea el titular del suelo ni de lo edificado, ni haya contado con la autorización del verdadero titular, prácticamente se derrota *742 su “buena fe”. No se puede obligar al verdadero titular a comprar la porción invadida del suelo vecino por causa de la construcción extralimitada de un poseedor que no estaba autorizado a construir. En estos casos, las consecuencias serán las mismas que en los supuestos de mala fe. Por el contrario, si el titular autorizó al edificante y este actuó de buena fe al construir, el titular estará sujeto a las conse-cuencias de la accesión invertida.
A base del segundo criterio, si no se cumple con el requisito de una extralimitación no aplicará la accesión invertida. Ello es así, ya que en el caso de que lo construido esté completamente en suelo ajeno, operará lo dispuesto en nuestro Código Civil sobre la accesión. De igual forma, en el supuesto de que lo construido de buena fe en suelo ajeno no forme un ente indivisible con la otra porción sita en suelo propio, le aplicará también la doctrina de la accesión que trata sobre el edificante de buena fe en suelo ajeno. Por su parte, cuando el edificio tiene una importancia o valor menor al de la porción de terreno invadida, no opera la accesión invertida. Esto tiene completo sentido, porque la cuantía que resulta de dicho valor superior más los daños que la extralimitación pudo haber ocasionado, sería mayor. Por lo tanto, es más costo-efectivo demoler la porción del edificio que se extralimita.
IV
En el caso de autos, el Tribunal de Primera Instancia, así como el Tribunal de Apelaciones, reconocieron que efec-tivamente la tercera residencia construida en la Parcela 35-A (residencia de la Sra. Myrna Laboy) invadió en forma de triangulo dos pequeñas áreas de la Parcela 34. Por tal razón, se trata de una construcción extralimitada en suelo ajeno. El Tribunal de Primera Instancia, a base de un aná-lisis firmemente cimentado en el expediente que tuvo ante *743 sí y en la vista oral que se celebró, determinó que la resi-dencia de la Sra. Myrna Laboy se construyó de buena fe.
El foro primario sostuvo que el edificante actuó con-forme a la información que existía en ese momento y que el Departamento de la Vivienda nunca clarificó. Además, al momento de la construcción de la tercera residencia, entre las dos parcelas en controversia existía una sección de verja que llevaba más de 30 años de construida. Así, to-mando en cuenta la verja y la ausencia de una determina-ción oficial de los linderos, el señor Laboy Roque construyó la tercera residencia en su "supuesto” terreno. De acuerdo con lo anterior, el Tribunal de Primera Instancia sostuvo que la construcción fue hecha de buena fe. Por tal razón, determinó segregarle la franja invadida a la Parcela 34 y agruparla con la Parcela 35-A, y a su vez, segregar la misma cantidad de terreno a esta última y agruparla con la Parcela 34.(66) De esa forma, se evitaba destruir la ter-cera residencia y la veija.
Inconforme con el dictamen, los demandados (la suce-sión titular de la Parcela 34 y quienes sufren la invasión) acudieron al Tribunal de Apelaciones. Este revocó al foro primario y fundamentó su dictamen en virtud de un plano que obra en el expediente y que supuestamente fue prepa-rado por el ingeniero Meléndez el 30 de enero de 2003. En dicho plano no consta la existencia de la tercera estructura y la que es objeto de esta controversia. Sin embargo, con-viene advertir que el referido plano no está firmado ni tiene fecha de preparación o título. El foro intermedio jus-tificó el uso del referido plano al concluir lo siguiente: "... de la minuta de la vista en su fondo surge que el Tribunal admitió en evidencia dos cartas originales del Departa-mento de la Vivienda y el Informe anejado del Ing. *744 Meléndez.”(67) Así, luego de revisar dicha minuta, así como el expediente, surge que efectivamente el referido plano se admitió en evidencia como Exhibit 1 del codemandado De-partamento de la Vivienda.(68)
No obstante, la conclusión del Tribunal de Apelaciones no compara con el análisis a la luz de la totalidad de la prueba testifical que tuvo ante su consideración el Tribunal de Primera Instancia. No surge del expediente que el foro primario haya actuado movido por pasión o prejuicio o que haya cometido error manifiesto en su apreciación de la prueba, sino, más bien, este ejerció su función de aquilatar la prueba desfilada según su mejor criterio. Evidente-mente, al evaluar toda la prueba ante sí, el foro primario dio menor valor probatorio al plano supuestamente prepa-rado por el ingeniero Meléndez. No vemos razón para des-cartar las determinaciones de hecho del foro primario, so-bre todo cuando fue éste quien consideró no sólo todos los documentos presentados, sino que también escuchó y ob-servó la prueba testifical.
Es principio reiterado que un tribunal apelativo tiene que brindarle gran deferencia a las determinaciones de he-chos y a la adjudicación de credibilidad establecida por el Tribunal de Primera Instancia, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto. (69) Esto es así, porque el foro de instancia es quien ve y escucha a los testigos y, por lo tanto, está en mejor posición para evaluarlos.(70) En consecuencia, el foro apelativo no puede sustituir por sus propias valoraciones del expediente las determinaciones tajantes y ponderadas del foro de instancia.(71) Así, en ausencia de error, pasión o prejuicio, la determinación del Tribunal de Primera Instancia me- *745 rece gran deferencia. Por tal razón, erró el Tribunal de Apelaciones al revocar la determinación del foro primario basado en un mero documento del expediente y sin contar siquiera con la transcripción de la vista oral.
Por otro lado, el Tribunal de Primera Instancia, para no destruir la residencia ni la verja en cuestión, tomó en con-sideración las recomendaciones de los ingenieros compare-cientes y ordenó “quitarle la franja invadida a la Parcela 34 y a su vez la Parcela 35 A deberá cederle la misma cantidad de terreno de su parcela a la Parcela 34”.(72) En lo pertinente, tenemos que admitir que en estricto Derecho el foro primario erró al conceder ese remedio. Ahora bien, ante la nueva doctrina que hoy adoptamos, es necesario analizar la controversia aquí planteada a la luz de los cri-terios adoptados.
Del expediente surge claramente que estamos ante un supuesto de construcción extralimitada y que dicha porción extralimitada forma un ente indivisible con el resto de la estructura. Además, conforme a lo señalado por el Tribunal de Primera Instancia, debemos reconocer que el edificante obró de buena fe al construir en un terreno que creía que no era ajeno. No obstante, no contamos con la información necesaria para considerar los demás criterios. Por ejemplo, del expediente solo surge que el edificante es usufructuario de la propiedad, es decir, no es el titular del suelo. Por ende, desconocemos si este contaba con la autorización del nudo propietario para construir la tercera estructura o si en el tiempo transcurrido ya es titular del suelo. Además, es necesario evaluar si el dueño del terreno invadido se opuso oportunamente a la construcción en cuestión. Estos asuntos son vitales para sostener la determinación de buena fe del foro primario y para la aplicación de la doc-trina hoy adoptada. Así, pues, es necesario que se presente prueba al respecto y el tribunal pueda considerar su cumplimiento.
*746 Ahora bien, de cumplirse con los criterios anteriores, sólo faltaría por evaluar el criterio que dispone que el valor de la estructura sea mayor que el de las porciones de suelo ajeno invadidas. En el caso de que algunos de los criterios no se cumplan, la accesión invertida no aplicaría y conlle-varía las consecuencias que ya hemos expuesto.(73)
V
En armonía con lo antes señalado, se revoca la Senten-cia del Tribunal de Apelaciones, Región Judicial de Ca-guas, y se devuelve el caso al Tribunal de Primera Instan-cia, Sala Superior de Caguas, para ulteriores procedi-mientos compatibles con lo aquí resuelto.

Se dictará Sentencia de conformidad.

 La norma vigente en ese momento no permitía la concesión de títulos de propiedad a parcelas que tuvieran más de una residencia. No es hasta 1999 que se aprueba la norma de conceder títulos de propiedad a los usufructuarios aunque exista más de una estructura en la parcela.

 Apéndice de la Petición de certiorari, pág. 1.

 íd., págs. 4-5.

 íd., págs. 58-62.

 Petición de certiorari, pág. 6.

 Vale señalar que en Marchand, v. Montes, 78 D.P.R. 131, 142 (1955), este Tribunal realizó una breve mención de la figura de la construcción extralimitada. No obstante, no existe otro pronunciamiento jurisprudencial que discuta la figura en cuestión.

 31 L.P.R.A. sec. 1131.

 J. Puig Brutau, Compendio de Derecho Civil, Barcelona, Ed. Bosch, 1989, Vol. III, pág. 123.

 31 L.P.R.A. secs. 1161-1176.

 31 L.P.R.A. sec. 1161.

 íd.

 íd.

 íd.

 Véanse: Arts. 298 y 299 del Código Civil, 31 L.P.R.A. secs. 1165 y 1166.

 Puig Brutau, op. cit., pág. 128.

 B. Verdera Izquierdo, La Construcción Extralimitada: Revisión Jurisprudencial, LXXVIII (Núm. 673) Rev. Crít. Der. Inmob. 1793, 1800 (2002).

 S. de 12 de diciembre de 1908, Núm. 20 (112 Jurisprudencia Civil 921).

 S. de 31 de mayo de 1949, Núm. 721, XVI, Repertorio de Jurisprudencia 436, 437. Según el tribunal español, la norma del Art. 36Í (Art. 297 nuestro)
"... quiebra si el dueño del suelo no lo es de toda la extensión del mismo, porque cuando esto sucede y lo construido constituye con aquél una unidad inseparable por no poderse hacer, como previenen los artículos 334 y 360 del Código Civil [Arts. 263 y 296 del nuestro] su división sin menoscabo, la accesión no se consuma con arreglo al principio inspirador del artículo antes citado y del 358 [Art. 294 nuestro], por falta de la base, necesaria para su aplicación, de que sean distintos los dueños del suelo y del edificio sobre él levantado.” (Énfasis suprimido.) Id.

 Repertorio de Jurisprudencia, supra, pág. 438.

 pujg Brutau, op. cit., pág. 132.

 íd.

 D. Espín Cánovas, Manual de Derecho Civil Español, 6ta ed., Madrid, Ed. Rev. Der. Privado, 1981, pág. 154.

 Verdera Izquierdo, supra.

 íd., pág. 1801.

6) S. de 15 de junio de 1981, Núm. 2524, XLVIII (Vol. I) Repertorio de Juris-prudencia 2092, 2094.

 S. de 31 de mayo de 1949, supra, pág. 436.

 L. Diez-Picazo, Fundamentos del Derecho Civil Patrimonial, 5ta ed., Navarra, Ed. Aranzadi, 2008, págs. 305-306.

 Verdera Izquierdo, supra, pág. 1806.

 S. de 29 de julio de 1994, Núm. 6305, LXI (Vol. III) Repertorio de Jurispru-dencia 8048.

 Diez-Picazo, op. cit, pág. 306.

 S. de 22 de marzo de 1996, Núm. 215/1996, XLIII (Vol. II) Repertorio de Jurisprudencia 3474.

 Se entiende que la figura no aplica “cuando el extralimitante no es el pro-pietario vecino (titular de un derecho limitado, poseedor), puesto que al dueño del terreno desde el que se realiza la invasión no se le puede obligar a adquirir la porción ajena que otro invadió, ni se puede reconocer este derecho al extralimitante no pro-pietario, ya que en este caso la situación de comunidad que se querría evitar se reproduciría al final de su posesión de la finca desde la que edificó”. A. Carrasco Perera, “Ius aedeficandi”y accesión (la construcción en suelo ajeno en el marco de los principios urbanísticos), Madrid, Ed. Montecorvo, 1986, pág. 354.

 Véase S. de 3 de abril de 1992, Núm. 2936, LIX (Vol. II) Repertorio de Jurisprudencia 3900, 3901.

 S. de 22 de marzo de 1996, supra.

 Véanse: S. de 1 de octubre de 1984, Núm. 4750, LI (Vol. III) Repertorio de Jurisprudencia 3683; S. de 11 de junio de 1993, Núm. 5409, LEX (Vol. III) Repertorio de Jurisprudencia 6905.

 Verdera Izquierdo, supra.

 S. de 11 de marzo de 1985, Núm. 1137, LII (Vol. I) Repertorio de Jurisprudencia 951, 953; S. de 27 de octubre de 1986, Núm. 6012, Lili (Vol. IV) Repertorio de Jurisprudencia 5872, 5875; S. de 23 de julio de 1991, Núm. 5416, LVIII (Vol. IV) Repertorio de Jurisprudencia 7345, 7347.

 S. de 11 de marzo de 1985, supra, pág. 953. Véase S. de 23 de julio de 1991, supra.

 Carrasco Perera, op. cit., pág. 352.

 J. Latour Brotons, La Construcción Extralimitada, L Rev. Der. Priv. 261, 265 (1966).

 M. Albaladejo, Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1983, T. III, Vol. I, págs. 306-308. En las circunstancias antedichas, los daños podrían ser, “si opta por enajenar el terreno, por lo que el perder ese trozo pequdique el valor de lo que resta; y si opta por exigir la demolición, por la privación del uso del terreno durante el tiempo que permaneció construido ...”. íd., pág. 306.

 Puig Brutau, op. cit., pág. 132.

 íd.

 Albaladejo, op. cit., pág. 309; Verdera Izquierdo, op. cit., pág. 1818.

 “Se nella costruzione di un edificio si ocupa in buona fede una porzione del fondo attiguo, e il proprietario di questo non fa opposizione entro tre mesi dal giorno in cui ebbe inizio la costruzione, l’autorita giudiziaria, tenuto conto delle circostanze, puó attribuire al costruttore la propietá dell’ edificio e del suolo occupato. II costru-ttore é tenuto a pagare al proprietario del suolo il doppio del valore della superficie occupata, oltre il risarcimento dei danni.” A. Scialoja y G. Branca (eds.), Commenta-rio del Codice Civile, 4ta ed., Bologna, Zanichelli Editore, 1976, Libro Tercero, Art. 938, pág. 511.

 íd.

 íd., pág. 513.

 íd., pág. 512.

 J. Santos Briz y otros, Tratado de Derecho Civil: teoría y práctica, Barcelona, Ed. Bosch, 2003, T. II, Cap. VIII, pág. 156.

 L. Enneccerus, T. Kipp y M. Wolff, Tiatado de Derecho Civil, (B. Pérez González y J. Alguer, trads.), 3ra ed., Barcelona, Ed. Bosch, 1971, T. III, Vol. 1, pág. 363.

61) íd., págs. 363-365.

62) íd., págs. 365-369.

 Véase Art. 7 del Código Civil, 31 L.P.R.A. see. 7.

 Véase E. Vázquez Bote, Tratado teórico, práctico y crítico de derecho privado puertorriqueño, Orford, New Hampshire, 1991, T. VII, Vol. I, pág. 369.

 íd.

 íd.

 J.R. Vélez Torres, Curso de Derecho Civil, Madrid, Ed. Offigraf, 1983, T. II, Cap. V, pág. 109.

 R.E. Bernier, El derecho de accesión en Puerto Rico: el abogado y su cliente, Barcelona, Imp. Vda. de Daniel Cochs, 1970, pág. 90.

 Vázquez Bote, op. cit., págs. 369-370.

 31 L.P.R.A. sec. 1424.

 31 L.P.R.A. sec. 5271.

 Diez-Picazo, op. cit., T. III, pág. 287.

 Verdera Izquierdo, op. cit., pág. 1815.

 Art. 299 del Código Civil, supra. Entendemos que lo dispuesto en el Art. 298 del Código Civil, supra, no aplica al supuesto de una construcción extralimitada, ya que permitir que el dueño del suelo invadido obtenga la titularidad de la porción que invade su terreno, resultaría en complejos problemas de titularidad y desarrollo de difícil solución.

 Art. 300 del Código Civil, 31 L.P.R.A. sec. 1167.

 j¡¡i reme(ji0 provisto por el Tribunal de Primera Instancia se fundamentó en la recomendación ofrecida por los ingenieros Humberto Meléndez, del Departamento de la Vivienda, e Ismael Carrasquillo, perito de la parte demandante.

 Apéndice de la Petición de certiorari, pág. 24.

 Véase Apéndice de la Petición de certiorari, pág. 125.

 Rolán v. Charlie Car Rental, Inc., 148 D.P.R. 420, 433 (1999).

 Pueblo v. Acevedo Estrada, 150 D.P.R. 84, 99 (2000).

 Rolón v. Charlie Car Rental, Inc., supra.

 Apéndice de la Petición de certiorari, pág. 62.

 Es importante señalar que sostenemos el dictamen del Tribunal de Primera Instancia en torno a la edificación de buena fe de la veq'a, la cual fue construida hace más de 30 años. En ese sentido, le aplicará la doctrina de la accesión, ya que esta fue construida en su totalidad en suelo ajeno. Por tal razón, en el caso de que se haya construido con materiales propios, le aplica lo dispuesto en el Art. 297 del Código Civil, 31 L.P.R.A. see. 1164.