ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| RICARDO R. HATTON RENTAS<br><br>Apelante<br><br>v.<br><br>BLANCA L. SÁEZ ORTIZ<br><br>Apelada | **KLAN202400465**<br><br><br><br><br>CONSOLIDADO | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Guaynabo<br><br>Civil Núm. GB2022CV00360<br><br>Sobre: Incumplimiento de Contrato; Derecho Animal |
| RICARDO R. HATTON RENTAS<br><br>Apelante<br><br>v.<br><br>BLANCA L. SÁEZ ORTIZ<br><br>Apelada | **KLCE202400696** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Guaynabo<br><br>Civil Núm. GB2022CV00360<br><br>Sobre: Incumplimiento de Contrato; Derecho Animal |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón[1], el Juez Bonilla Ortiz, y el Juez Pagán Ocasio.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece Ricardo Hatton Rentas (en adelante, el señor Hatton o el apelante) mediante recurso de *Apelación* presentado el 9 de mayo de 2024 en la cual solicitó la revisión de la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Guaynabo, el 17 de abril de 2024. Mediante el referido dictamen, el foro primario declaró *No ha Lugar* la *Demanda*

---

[1] En virtud de la Orden Administrativa OATA-2024-054, se designa a la Hon. Sol de Borinquen Cintrón Cintrón.

Número Identificador
SEN2024 _____

presentada por el señor Hatton y asignó la guarda y custodia de las mascotas bajo la responsabilidad Blanca Sáez Ortiz (en adelante, la señora Sáez o la apelada). Además, el foro primario le impuso al señor Hatton el pago de $2,000.00 por conceptos de honorarios de abogados.

Igualmente, el 25 de junio de 2024, el apelante presentó un recurso de *Certiorari* mediante el cual solicitó la revisión de la *Resolución* emitida el 12 de junio de 2024 donde el foro primario concedió las costas solicitadas por la parte apelada.

Por los fundamentos que se exponen a continuación, **CONFIRMAMOS** la *Sentencia* apelada y se **MODIFICA** la Resolucion sobre concesión de costas.

### -I-

Conforme surge del expediente ante nuestra consideración, los hechos procesales que precedieron a los recursos consolidados de epígrafe son los que a continuación exponemos.

### KLAN202400465

El 22 de abril de 2022, el señor Hatton presentó una *Demanda* por incumplimiento contractual contra la señora Sáez.[2] En la referida Demanda, el señor Hatton alegó que tras la ruptura de la relación sentimental con la señora Sáez existía entre ellos un acuerdo de guarda y custodia sobre dos mascotas adquiridas durante la relación, a saber: (1) una perra llamada Luna, y (2) una gata llamada Hazel. *Íd.* Explicó, el señor Hatton, que dicho acuerdo se cumplió fielmente por aproximadamente nueve meses hasta que la señora Sáez decidió de manera

---

[2] *Demanda*, anejo II, págs. 2-5 del apéndice del Recurso de Certiorari.

unilateral dejar sin efecto el mismo mediante una carta cursada el 21 de abril de 2022 por su representante legal.[3]

Ante esto, el 1 de junio de 2022, la señora Sáez presentó una *Moción de Desestimación* en la cual sostuvo que las dos mascotas le pertenecían a su hija menor de edad (en adelante, CVGS) y, que estas habían sido adquiridas para el exclusivo beneficio y apoyo emocional de CVGS.[4] Además, alegó que ella sufragaba todos los gastos de las mascotas como el plan médico, vacunas, desparasitación, esterilización, sesiones de "grooming", emergencias de salud y otros. *Íd.*

En consecuencia, el 3 de junio de 2022, el señor Hatton presentó su *Oposición a Solicitud de Desestimación y en Solicitud de Sentencia Sumaria y/o Declaratoria* donde expuso que CVGS no podía cumplir con los requisitos mínimos que requiere la Ley Núm. 154 del 4 de agosto de 2008, según enmendada, conocida como *Ley para el Bienestar y la Protección de los Animales*.[5] El señor Hatton sostuvo, además, que la moción presentada por la señora Sáez contenía nuevas materias no contenidas en la alegación impugnada y, por ello, debía ser considerada como una Solicitud de Sentencia Sumaria.

A esos efectos, el 10 de junio de 2022, el TPI emitió *Resolución* declarando *No Ha Lugar* las mociones antes descritas.

Tras varios trámites procesales ante el foro primario y ante este Honorable foro revisor, el TPI

---

[3] *Prueba Demandante-Apelante*, anejo II, págs. 12-14 del apéndice del Recurso de Apelación.
[4] *Moción de Desestimación*, anejo III, págs. 52-66 del apéndice del Recurso de Apelación.
[5] *Véase*, Entrada Núm. 16 del expediente electrónico en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

celebró el juicio en su fondo en las siguientes fechas: 10 y 17 de julio de 2023, 28 de agosto de 2023 y 4 de diciembre de 2023.

Así las cosas, el 17 de abril de 2024, el foro primario emitió una Sentencia en la cual declaró *No ha Lugar* la *Demanda* presentada por el señor Hatton y asignó la guarda y custodia de las mascotas bajo la responsabilidad de la señora Sáez. Además, el foro primario le impuso al señor Hatton el pago de $2,000.00 por conceptos de honorarios de abogados. Mediante el referido dictamen, el foro primario consignó las siguientes determinaciones de hechos:

3. La Sra. Sáez es madre de un hijo, mayor de edad, de nombre Sebastián, y de dos menores de edad, ambas féminas de iniciales VEMS y CVGS.

4. La menor de sus hijas, que tiene 12 anos a esta fecha, es hija del Lcdo. Gerome Garffer Crowley y la demandada.

5. Las partes iniciaron una relación sentimental en octubre de 2018 y para agosto de 2019, se mudaron juntas a una residencia que el demandante adquirió en el área de Guaynabo. Con la demandada se mudaron también sus hijas menores de edad, VEMS y CVGS, así como sus mascotas. El hijo de la Sra. Sáez era estudiante universitario en los Estados Unidos.

[…]

7. El 25 de agosto de 2020, la fecha de apertura de Plaza las Américas luego de un cierre por la Pandemia del COVID, la demandada rescato una gata, que aparentaba estar muy débil, a quien llamo Hazel.

[…]

12. La menor CVGS padece de condiciones relacionadas a su salud emocional, ansiedad generalizada y depresión.

13. Por recomendación médica, y para beneficio de la menor CVGS, la demandada realizó tramites con una criadora, de nombre Yvonne para comprar una perrita maltese como regalo por la Primera Comunión de su hija CVGS.

14. EL demandante no conocía a la criadora de nombre Yvonne.

15. La Primera Comunión fue el 14 de noviembre de 2020 en la Institución Educativa donde la menor CVGS cursa estudios.

16. Luego de la Primera Comunión, la demandada fue con su hija CVGS a buscar la perrita, que le fue entregada en el Centro Comercial Escorial en Carolina. La perrita pesaba solo 1.5 libras y tenia mas o menos 6 semanas de nacida. De su cuenta, la demandada había retirado la suma de $1,000.00 para pagar por la compra.

[…]

18. La menor CVGS nombro a la perita "Luna".

19. La demandada se encargó de adquirir los productos necesarios para mantener a Luna incluyendo los gastos incurridos con un medico veterinario ubicado en Calle Acuarela de Guaynabo, las vacunas, plan medico para animales que cubría enfermedades y emergencias y la comida necesaria de acuerdo con la edad.

21. La demandada realizo gestiones para inscribir la perrita Luna como perro de soporte emocional (emocional support dog) de la menor CVGS en la American Canine Association.

24. La perrita Luna y Hazel se llevaban y compartían todo el tiempo, pues llegaron a la casa muy cerca en tiempo una de la otra.

25. El demandante se acostumbró a estar con estas mascotas, aunque pasaba mucho tiempo a fuera de la casa.

26. Para el mes de junio de 2021, el demandante dio por terminada la relación, por lo que la demandada debía mudarse de la casa.

[…]

29. Varias semanas después de que la demandada abandonara la residencia del demandante, este pidió tener a Luna unos días al mes. La demandada, aunque no quería acceder a la petición ya que la mascota le pertenecía a su hija, permitió que el demandado se llevara la mascota ya que, emocionalmente, estaba muy dolida por la ruptura y el fin de la relación, y sentía que no tenia las herramientas para afrontar discusiones y controversias por ese asunto con el demandante.

30. Cuando el demandante comenzó a llevarse la mascota Luna, esta no quería comer y no se acostumbraba a estar sola. Por ello, la

demandada entregaba a la gatita Hazel junto a Luna, para que se hicieran compañía y estuvieran juntas.

31. La demandada trato de comunicarle al demandante que su petición de tener mascotas le estaba causando dolor, sufrimiento y tristeza a la menor CVGS y que la salud emocional se afectaba cada vez que esta tenía las mascotas.

32. Cuando el demandante se llevaba las mascotas, la menor CVGS se sentía triste, enojada y lloraba sin consuelo al no entender porque el demandante quería a Luna cuando fue a ella quien se la regalaron.

Inconforme con la sentencia, el 9 de mayo de 2024, el señor Hatton presentó el Recurso **KLAN202400465** que nos ocupa y señaló la comisión de los siguientes errores:

A. ERRÓ EL TPI EN LA APLICACIÓN DEL ARTÍCULO 235 DEL CÓDIGO CIVIL DE P.R. AL ASUMIR JURISDICCION SOBRE LA CUSTODIA DE UNAS MASCOTAS ANTE LA CLARA EXISTENCIA DE UNA ACUERDO DE CUSTODIA ENTRE LAS PARTES.

B. ERRÓ EL TPI AL DAR UN TRATAMIENTO PROPIETARIO A LAS MASCOTAS EN CONTRAVENCIÓN A LAS DISPOSICIONES NUEVO CCPR Y EL ART. 232.

C. ERRÓ EL TPI EN LA APLICACIÓN DEL ARTICULO 235 FUNDAMENTAR SU DETERMINACIÓN EN ASUNTOS NO PERTINENTES AL REFERIDO ARTICULO Y AL ADJUDICAR LA GUARDA DE LAS MASCOTAS EXCLUSIVAMENTE A LA MENOR CGS.

D. ERRÓ EL TPI AL REALIZAR DETERMINACIONES DE HECHOS SOBRE LA GUARDA DE LAS MASCOTAS CONTRARIAS A LA PRUEBA DOCUMENTAL PRESENTADA EN EL JUICIO Y OMITIR HECHOS MATERIALES.

E. ERRÓ EL TPI AL REALIZAR UNA DETERMINACIÓN DE TEMERIDAD CONTRA LA PARTE DEMANDANTE-APELANTE SIN FUNDAMENTOS O BASE FÁCTICA PARA ELLO.

Oportunamente, el 6 de junio de 2024, la apelada presentó su *Oposición a Apelación*.

### KLCE202400696

Posteriormente, el 22 de abril de 2024, la señora Sáez presentó un *Memorando de Costas*[6] ante el Tribunal

---

[6] *Memorando de Costas*, anejo IV, págs. 17-20 del apéndice del Recurso de Certiorari.

de Primera Instancia donde reclamó el pago de $5,229.00 por los siguientes gastos:

- **Sello RI** de radicación de contestación-$90.00
- Mensajero para recogido pendrive grabaciones-$20.00
- Honorarios de regrabaciones-$24.00
- Honorarios de abogado por el JUICIO y memorando-$5,095.00.

En consecuencia, el 25 de abril de 2024, el señor Hatton presentó su *Oposición a Memorando de Costas*.[7]

Finalmente, el 12 de junio de 2024, el foro primario emitió una *Resolución* en la cual aprobó las costas solicitadas por la señora Sáez.[8]

Por estar insatisfecho con dicha *Resolución*, el 25 de junio de 2024, el señor Hatton presentó el recurso **KLCE20240696** que nos ocupa y señaló la comisión de los siguientes errores:

> ERRÓ EL TPI REALIZAR UNA NUEVA IMPOSICIÓN DE HONORARIOS DE ABOGADO CONTRA LA PARTE DEMANDANTE-RECURRENTE SIN HABERSE ESTABLECIDO LOS FUNDAMENTOS PARA LA TEMERIDAD DE CONFORMIDAD CON LA REGLA 44.1 DE LAS DE PROCEDIMIENTO CIVIL.

Luego de evaluar ambos recursos, el 27 de junio de 2024, emitimos una *Resolución* en la que ordenamos la consolidación de ambos casos, a tenor con lo dispuesto en el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.

Con el beneficio de los escritos de las partes, damos los recursos consolidados por perfeccionados y procedemos a resolverlos.

---

[7] *Oposición a Memorando de Costas*, anejo II, págs. 2-5 del apéndice del Recurso de Certiorari.

[8] *Resolución*, anejo I, pág. 1 del apéndice del Recurso de Certiorari.

-II-

A.

El Código Civil de Puerto Rico de 2020 (en adelante, Código Civil) incorporó en el Libro Primero, el Titulo II nombrado "Los Animales Domésticos y Domesticados" con cuatro artículos que discutimos a continuación.

A saber, en el Artículo 232 del Código Civil, 31 LPRA sec. 5951, reconoce lo que sigue sobre los animales domésticos y domesticados: (1) son seres sensibles, (2) son inembargables y (3) no son bienes o cosas. Además, define a los **animales domésticos** como "aquellos que han sido criados bajo la guarda de una persona, que conviven con ella y necesitan de esta para su subsistencia y no son animales silvestres". *Íd*. Mientras, establece que los **animales domesticados** son aquellos "entrenados para modificar su comportamiento para que realicen funciones de vigilancia, protección, búsqueda y rescate de personas, terapia, asistencia, entrenamiento, y otras acciones análogas". *Íd*.

Ahora bien, el Artículo 233 del Código Civil, 31 LPRA sec. 5952, implanta el deber de que cualquier decisión relacionada a los animales domésticos y domesticados y su guarda, sean para garantizar el bienestar y seguridad física de estos. En adición, el Artículo 235 del Código Civil, 31 LPRA sec. 5954, dispone los elementos a considerar al adjudicar la guarda de un animal, a saber:

> En caso de separación o divorcio de la familia que comparte la guarda del animal, a falta de acuerdo entre las partes, corresponde al tribunal adjudicarla. Igualmente, debe el tribunal resolver el derecho que corresponde a la persona a quien no se le otorga la guarda, a compartir con el animal.

**El tribunal adjudicará la guarda del animal** y los derechos a tenerlo en su compañía, **teniendo en cuenta el mejor interés de los miembros de la familia y el bienestar y la seguridad del animal.** El tribunal puede imponer a cualquiera de las personas que comparten la guarda o compañía, si tienen medios económicos suficientes, una aportación económica para satisfacer las necesidades básicas del animal. (Énfasis nuestro)

Conforme a lo anterior, los animales domésticos y domesticados no son un bien mueble perteneciente al patrimonio de una persona ni son susceptibles de apropiación alguna. Incluso, así mismo fue establecido en la Exposición de Motivos del Código Civil:

Los animales domésticos y domesticados quedan excluidos de la definición de bienes o cosas muebles. De este modo, se evita que puedan estar sujetos a embargo o apropiación por un tercero. La guarda, custodia o tenencia física y las decisiones relacionadas a los animales domésticos y domesticados, se atenderá garantizando su bienestar y seguridad física. Con ello promovemos que estos seres tengan derecho a un trato digno y justo y protegemos la preservación de su vida, su alimentación, los cuidados veterinarios y de salud.

Igualmente, la Ley Núm. 154 del 4 de agosto de 2008, según enmendada, conocida como *Ley para el Bienestar y la Protección de los Animales* (en adelante, Ley Núm. 154-2008), exige unos deberes de cuidado mínimo para con las mascotas. Específicamente, el Artículo 2 (c) de la referida ley, define los cuidados mínimos como aquel "cuidado suficiente para preservar la salud y bienestar de un animal, exceptuando emergencias o circunstancias más allá del control razonable del guardián". 5 LPRA sec. 1600. Además, incluye una lista no taxativa sobre los cuidados mínimos que debe recibir un animal:

i. Cantidad y calidad de alimento suficiente para permitir el crecimiento o mantenimiento de peso corporal normal para el animal.

ii. Acceso abierto o adecuado a agua potable, de temperatura apta para tomar en cantidad

suficiente para satisfacer las necesidades del animal.

iii. Acceso a un establo, casa o cualquier otra estructura que pueda proteger al animal de las inclemencias del tiempo, y que tenga un lugar apropiado para dormir que lo proteja del frío, calor excesivo y la humedad.

iv. Proveer el cuidado veterinario que una persona prudente estime necesario para proteger al animal de sufrimiento; incluye vacunación y cuidado preventivo.

v.  Acceso continuo a un área. […]

5 LPRA sec. 1600.

**B.**

En materia de apreciación de prueba, los foros apelativos debemos brindar deferencia a las determinaciones de hechos formuladas por el foro judicial primario. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 740 (2007); *Rolón v. Charlie Car Rental, Inc.*, 148 DPR 420, 433 (1999). La norma general es que, si la actuación del foro *a quo* no está desprovista de una base razonable y no perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de primera instancia, a quien le corresponde la dirección del proceso. *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

Así, el Tribunal de Apelaciones evitará variar las determinaciones de hechos del foro sentenciador, a menos que medie pasión, prejuicio, parcialidad o error manifiesto. Regla 42.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2. Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 817 (2009). Sobre el particular, nuestro Tribunal Supremo ha expresado que:

Una de las normas más conocidas en nuestro ordenamiento jurídico es que los tribunales apelativos no intervendremos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, a menos que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Dávila Nieves v. Meléndez Marín*, *supra*, pág. 753.

Esta norma de autolimitación judicial cede cuando "un análisis integral de [la] prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que se estremezca nuestro sentido básico de justicia; correspondiéndole al apelante de manera principal señalar y demostrar la base para ello." *Pueblo v. Cabán Torres,* 117 DPR 645, 648 (1986).

Como foro apelativo no debemos intervenir con las determinaciones de hechos, ni con la adjudicación de credibilidad que hace un Tribunal de Primera Instancia y sustituir mediante tal acción su criterio, por el nuestro. *Rivera Menéndez v. Action Services*, 185 DPR 431, 448-449 (2012); *SLG Rivera Carrasquillo v. A.A.A.,* 177 DPR 345, 356 (2009). Así, la apreciación que hace el foro primario merece nuestra deferencia, toda vez que es quien tiene la oportunidad de evaluar directamente el comportamiento de los testigos y sus reacciones. En fin, es el único que observa a las personas que declaran y aprecia su *demeanor*. *Ramírez Ferrer v. Conagra Foods PR*, supra; *Trinidad v. Chade*, 153 DPR 280, 291 (2001); *Ramos Acosta v. Caparra Dairy Inc.*, 113 DPR 357, 365 (1982).

Ahora bien, la regla de deferencia antes descrita se exceptúa cuando se trata de determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en

idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *González Hernández v. González Hernández,* 181 DPR 746 (2011); *Ortíz, et al. v. SLG Meaux,* 156 DPR 488, 495 (2002).

C.

La Regla 44.1(a) de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 44.1, dispone que la concesión de costas "le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión […]". Según la citada regla, el criterio para que el tribunal decida cuáles partidas de las costas solicitadas concede, es que se trate de los "**gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra**". (Énfasis suplido).

Sobre el procedimiento para solicitar la adjudicación de costas, las Reglas de Procedimiento Civil disponen que la parte reclamante cuenta con diez (10) días contados a partir de la notificación de la sentencia que le favorece, para presentarle al tribunal, y notificar a la parte contraria, un memorando de costas. *Véase,* Regla 44.1(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1. El referido término de diez (10) días es de naturaleza jurisdiccional. *Comisionado v. Presidenta*, 166 DPR 513, 518 (2005). Según la disposición aludida, el memorando constará de una relación de "todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del pleito o procedimiento". *Íd.*

Así también, las Reglas de Procedimiento Civil proveen para impugnar las costas concedidas por el Tribunal de Primera Instancia. En tales casos, la Regla

44.1(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, dispone lo siguiente:

> Cualquier parte que no esté conforme con las costas reclamadas podrá impugnarlas en todo o en parte, dentro del término de diez (10) días contados a partir de aquel en que se le notifique el memorándum de costas. El tribunal, luego de considerar la posición de las partes, resolverá la impugnación. La resolución del Tribunal de Primera Instancia podrá ser revisada por el Tribunal de Apelaciones mediante el recurso de certiorari. De haberse instado un recurso contra la sentencia, la revisión de la resolución sobre costas deberá consolidarse con dicho recurso.

### D.

La Regla 44.1(d) de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 44.1, faculta a los tribunales a imponer el pago de una cuantía por concepto de honorarios de abogado. Al respecto, la referida disposición establece lo siguiente:

> En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. […]

El concepto de temeridad es amplio. *Torres Montalvo v. García Padilla*, 194 DPR 760, 778 (2016). El propósito de este mecanismo es penalizar al que, con su conducta, ha obligado a la parte adversa en un litigio a incurrir en gastos y, con ello, le ha causado innecesariamente molestias e inconvenientes. *SLG Flores-Jiménez v. Colberg*, 173 DPR 843, 867 (2008); *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999). De este modo, se persigue imponer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las

molestias, gastos, trabajo e inconveniencias de un pleito. *Montalvo v. García Padilla*, citando a *Andamios de PR v. Newport Bonding*, 179 DPR 503, 520 (2010).

En fin, la temeridad es una conducta que afecta el buen funcionamiento de los tribunales y la administración de la justicia. *Montalvo v. García Padilla, supra.* Por tanto, la imposición del pago de honorarios de abogado, de conformidad con la Regla 44.1, *supra*, supone que el tribunal haga una determinación de temeridad. Dicha determinación "…descansa en la sana discreción del tribunal sentenciador". *Raoca Plumbing v. Trans World*, 114 DPR 464, 468 (1983). Así, el tribunal impondrá la cuantía que el juzgador entienda corresponde a la conducta temeraria. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 212 (2013); citando a *Andamios de PR v. Newport Bonding*, *supra*. En otras palabras, la Regla 44.1, *supra*, establece que si se determina la temeridad es mandatorio imponer honorarios de abogados. Ahora bien, "[e]n ausencia de una conclusión expresa a tales efectos, un pronunciamiento en la sentencia condenando al pago de honorarios de abogado, implica que el tribunal sentenciador consideró temeraria a la parte así condenada." *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 DPR 38, 39-40 (1962). Es decir, no es necesaria una determinación expresa de temeridad si el foro sentenciado impuso el pago de una suma por honorarios de abogado en su sentencia. Tal determinación del tribunal no será variada en apelación a menos que se demuestre que éste ha abusado de su discreción. *Pérez Rodríguez v. López Rodríguez et al.,* 210 DPR 163, 193 (2022); *SLG González-Figueroa v. SLG et al,* 209 DPR 138, 150 (2022).

-III-

A.

Por estar relacionados, atendemos en conjunto el primer, segundo y tercer señalamiento de error planteado por el apelante. En síntesis, el señor Hatton alega que erró el foro primario en su aplicación de los artículos 532 y 535 del Código Civil. Además, arguye que el foro primario ejerció un tratamiento compatible con la posesión de bienes muebles sobre las mascotas. No obstante, entendemos que no tiene razón. Veamos.

Recordemos que, en cuanto a los animales domésticos y domesticados, el Código Civil de 2020 les permite a las partes establecer acuerdo entre estos sobre la guarda de un animal. 31 LPRA sec. 5954. Es decir, las partes pueden decidir conjuntamente quien será el guardián del animal y el modo para ejercerlo, sin intervención alguna del tribunal. No obstante, si las partes no pueden establecer un acuerdo entre sí, el Código Civil de 2020 les permite acudir al tribunal. *Íd.* En esa instancia, este Tribunal tiene el deber de tomar decisiones dirigidas a garantizar el bienestar y seguridad física de tales animales domésticos y domesticados. 31 LPRA sec. 5952. Inclusive, al momento de adjudicar la guarda de estos animales, debemos tomar en cuenta el mejor interés tanto para los miembros de la familia, como para el bienestar y seguridad de las mascotas. 31 LPRA sec. 5954. Además, explicamos que nuestro ordenamiento jurídico, ha rechazado la calificación propietaria de los animales y, ahora, estos son considerados seres sensibles. Por ello, al momento de adjudicar la guarda del animal debemos considerar

quien es el cuidador principal basado en factores como el cuidado veterinario, aseo, comida, compañía y otros.

En el caso de autos, luego de un acuerdo inicial, no fue posible que las partes lograran establecer un acuerdo definitivo sobre la guarda de las mascotas: Luna y Hazel. Debido a eso, acudieron al Tribunal de Primera Instancia y acuden en apelación ante este Tribunal revisor. Por lo que, estamos en posición de intervenir conforme a derecho.

Surge del expediente que la señora Sáez fue quien rescató la gata Hazel y quien compró la perra Luna, para el beneficio psicológico de su hija CVGS. Además, el foro primario dio entera credibilidad sobre los actos de cuidado que realizan la señora Sáez y la menor CVGS, a favor de ambas mascotas. Lo anterior, en cumplimiento con los cuidados mínimos requeridos por la Ley Núm. 154-2008. De manera que el foro primario entendió que el señor Hatton no tiene derecho a tener la guarda de las mascotas debido a la salud emocional, mental y psicológica de CVGS. Particularmente, el TPI expresó lo siguiente:

> Este Tribunal reconoce que, durante la convivencia de las mascotas en la residencia del demandante, este compartía con estas, pues estaban todos en su casa. Sin embargo, esta relación e interacción, no es lo suficiente para que este Tribunal conceda lo solicitado por el demandante, a saber, tener la guarda compartida de las mascotas.

> Este Tribunal toma en consideración además de lo que resulta ser el mejor bienestar de las mascotas, y mas que nada, de la menor CVGS a cuyo testimonio le otorgamos entera credibilidad.

A la luz de lo anterior, entendemos que la determinación realizada por el foro primario adjudica la guarda de las mascotas a la parte que se encuentra en

mejor posición para garantizar el bienestar y seguridad de estos, mientras al mismo tiempo vela por el mejor bienestar de la menor CVGS. Por ello, avalamos el dictamen del TPI, así garantizamos tanto el bienestar de las mascotas y de la menor CVGS. No tenemos razón para intervenir con la *Sentencia* apelada.

En consideración con lo antes expuesto, concluimos que no fueron cometidos el primer, segundo y tercer señalamiento de error.

**B.**

A continuación, procedemos con la discusión del cuarto señalamiento de error planteado por el apelante. En síntesis, el señor Hatton argumenta que el TPI erró al realizar determinaciones de hechos contrarias a la prueba documental presentada en el juicio y, además, alegó omitió hechos materiales.

Conforme discutimos, en el derecho aplicable, este Tribunal se encuentra en igual posición que el Tribunal de Primera Instancia al evaluar prueba documental. Incluso, por estar en idéntica posición, podemos intervenir en las determinaciones de hechos realizadas por el foro primario, siempre que estén basados en prueba documental presentada en el juicio en su fondo. Lo anterior es una excepción a la regla general de deferencia que debemos al tribunal revisado. Sin embargo, el foro primario tiene la facultad de evaluar toda evidencia pertinente y admisible ante sí, y, a su vez, emitir una decisión conforme a la evaluación conjunta de esa evidencia. Además, es sabido que el TPI tiene la potestad de evaluar directamente a la evidencia testifical. Por ello, puede otorgar la credibilidad que entienda merecedora a los testigos declarantes.

En el caso de autos, se celebró un juicio en su fondo de cuatro (4) días en el cual se presentó prueba documental y testifical. De manera que, el foro primario emitió la *Sentencia apelada* con unas treinta y cinco (35) determinaciones de hechos. Dicha Sentencia no especifica si las determinaciones de hechos fueron basadas exclusivamente con la prueba documental o testifical. Al contrario, surge expresamente de la parte dispositiva de la *Sentencia* apelada que el foro primario otorgó entera credibilidad a los testimonios presentados durante el juicio. Por lo tanto, debemos inferir que el foro primario evaluó toda la prueba que desfiló durante los días de juicio de manera conjunta. No obstante, el señor Hatton presentó ante nos un recurso de *Apelación* sin el beneficio de una transcripción de la prueba oral. Aunque el apelante no está impugnando la prueba oral, no nos ha colocado en posición y nos deja con las manos atadas para revisar la apreciación de la prueba realizada por el TPI durante el juicio.

Siendo ello así, y ante la norma imperante en nuestro ordenamiento jurídico, debemos darle total deferencia a las determinaciones de hechos a las que arribó el foro primario.

## C.

Por último, atendemos en conjunto el quinto señalamiento de error planteado en **KLAN202400465** y EL único error señalado en **KLCE202400696.** En esta instancia, el señor Hatton argumenta que el TPI erró al hacer una determinación de temeridad sin fundamento o base fáctica. No tiene razón. Veamos.

Según indicamos en el ápice II, el tribunal en su sana discreción **puede** hacer una determinación de

temeridad e imponer una cuantía por concepto de honorarios de abogados, a lo que debemos deferencia. Ahora bien, tal determinación de temeridad puede ser: (1) expresa o implícitamente y (2) con o sin fundamento fáctico. *Montañez Cruz v. Metropolitan Cons. Corp., supra.* Por lo tanto, el tribunal no tiene la obligación de establecer una determinación de temeridad detallada ni tampoco está obligado a fundamentar la misma.

En cuanto a las costas, es un asunto distinto. Explicamos que las costas son concedidas a la parte prevaleciente en la Sentencia, siempre que cumpla con los requisitos de ley para solicitar las mismas. No obstante, el Tribunal tiene el deber de evaluar si los gastos reclamados son necesarios y pertinentes en la tramitación del pleito en cuestión.

Considerando lo anterior sobre las normas de costas y honorarios de abogados, concluimos que carecemos de elementos suficientes para intervenir con la determinación del Tribunal de Primera Instancia y descartar el criterio de deferencia que le debemos al dictamen aquí impugnado en cuanto a las costas impugnadas, excepto por la concesión de $5,095.00 de gastos de abogados. Esta partida en específico no fue adecuadamente fundamentada por la parte apelada.

En ausencia de pasión, prejuicio, parcialidad o error manifiesto, concluimos que no se cometieron los señalamientos de error planteados por el señor Hatton, excepto por lo antes indicado de gasto de abogados por $5,095.00.

**-IV-**

Por los fundamentos antes expuestos, se **CONFIRMA** la *Sentencia* apelada del 17 de abril de 2024; igualmente se

expide el auto de *certiorari* en el caso **KLCE202400696** y se **MODIFICA** la *Resolución* del 12 de junio de 2024 sobre las costas del juicio para eliminar la suma de $5,095.00, y se confirma en las demás partidas.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones